SAVOY, Judge.
This is a suit in tort by plaintiff, individually, and as administrator of the estate of his minor son, Jere J. Bice, seeking damages arising out of an accident on October 27, 1964, when an air conditioning unit fell from the window of the home rented by plaintiff and injured Jere J. Bice. It is alleged that the owner of the house, Mr. Dave Fontenot, who held a public liability insurance policy with the defendant, was negligent in allowing the window sill and boards to become rotten and defective without repairing them, and in failing to maintain the window sill and boards in good condition.
The defendant filed an answer admitting insurance coverage in favor of Dave Fon-tenot, but denying any liability under the policy. It was alleged that Dave Fontenot had no prior knowledge of the defective condition of the window sill, and that he *504 did not have reasonable time within which to remedy the condition. It is alleged, alternatively, that plaintiff was contributorily negligent in placing the air conditioning unit in the window with knowledge that the sill and boards were rotten, in failing to see that the unit was properly installed, and in failing to inform Dave Fontenot of the condition of the window sill prior to installation of the air conditioning unit.
After a trial on the merits before a jury, a verdict was rendered in favor of plaintiff, for the use and benefit of his minor son, Jere J. Bice, for $7,300.00, plus legal interest, and in favor of plaintiff, individually, for $760.63, plus legal interest. After judgment was duly signed, defendant filed a motion for new trial, which motion was denied. Defendant filed a suspen-sive and devolutive appeal to this Court, and plaintiff filed an answer to the appeal.
Defendant maintains that the lessor-owner, Dave Fontenot, was not at fault in failing to repair the window in question, inasmuch as LSA-Civil Code Article 2716 imposes the responsibility of such repairs on the tenant. It is maintained that the proximate cause of the accident was (1) the failure of plaintiff to repair the window, (2) the initial installation of the air conditioning unit in the window in a faulty manner, and (3) the failure of plaintiff to remove the unit, knowing of the defective condition of the window. Alternatively, it is maintained that these acts constituted contributory negligence on the part of plaintiff. It is further maintained in the alternative that the award for Jere J. Bice was excessive.
Plaintiff maintains there was sufficient evidence to sustain the verdict of the jury. It is maintained that Article 2716 does not apply to the facts of this case since there was no evidence introduced showing that it is the custom of this area for a lessee to repair windows, etc. as specified in the article. Further, it is contended that the article does not apply inasmuch as the evidence shows there was an agreement between plaintiff and Dave Fontenot that Mr. Fontenot was to make all repairs to the house, even the minor ones, and that he had been notified that the window in question needed repairing. In the alternative, it was maintained that the defense of contributory negligence would apply only to-plaintiff’s individual claim for medical expenses, but would not apply to the award made for Jere J. Bice. In his brief, the plaintiff maintained that the award for Jere J. Bice was fair and not manifestly excessive or inadequate.
The record shows that in the year 1962 the plaintiff rented, on a month-to-month basis, a six room wooden house owned by Dave Fontenot, located at 2014 Fourth-Avenue in Lake Charles, Louisiana. Plaintiff, his wife and their two children lived in the house. The defendant issued and had in effect a public liability insurance-policy in favor of Mr. Fontenot covering this house, as well as other rental units owned by Mr. Fontenot. In July of 1962, plaintiff purchased a window air conditioning unit, a 15,000 B.T.U. Philco make, from Hemenway’s in Lake Charles. Hemen-way’s installed this unit in a front window of the house facing on Fourth Avenue, in-a room which served as a dining room and living room. On October 27, 1964, at about 3:30 P.M., the plaintiff’s son, Jere J. Bice who is called “Jay”, was playing in the front yard with a playmate, Bryan Farrier. At that time, Jay was not quite seven years of age, having been born on December 21, 1957. Mrs. Bice was seated in the living room area of the front room and heard the unit fall out of the window and her son scream. She ran out to find her son on the ground with half of his leg under the air conditioning unit. She pulled her child from under the unit, and sent Bryan Farrier to get her next door neighbor, Mrs. Francis Mire, who phoned for an ambulance. Jay received a broken leg from the accident. He was treated by Dr. Edward W. Phillips, Jr., who performed an operation and placed Jay in traction in the hospital- for .three weeks. A cast was applied *505 for a period of about two months and Jay was discharged from treatment by Dr. Phillips on February 23, 1965.
Plaintiff called as witnesses Mr. and Mrs. Jere E. Bice, Mrs. Francis Mire, and Dr. Edward W. Phillips, Jr. The defendant called as witnesses Mr. and Mrs. Dave Fontenot. Mr. and Mrs. Bice and Mr. and Mrs. Fontenot testified that Mr. Fontenot had agreed to make all repairs to the leased premises, including minor repairs, and that he had, in fact, made certain repairs under this agreement. Mr. and Mrs. Fontenot testified that they had a number of rent houses, and it was their policy to take care of all repairs in order to keep renters. This agreement was stated to prospective renters to entice them to rent these rental units. Mr. Fontenot testified that under this agreement, he removed a window, sitting a door in its' place; changed a sewer line; fixed the washer and dryer; and made other repairs during the occupancy by Mr. and Mrs. Bice. Mrs. Bice testified that Mr. Fontenot made repairs to the plumbing, the faucets and a broken window. Mrs. Mire testified she saw Mr. Fontenot making such repairs also. Mr. Bice testified Mr. Fontenot repaired a door, a window in the kitchen, the brace on a screen door, and made repairs to the plumbing. Mrs. Fontenot testified her husband fixed the window fan and made all kinds of small repairs on the home during the occupancy by Mr. and Mrs. Bice. Mr. and Mrs. Fon-tenot also testified they had installed wiring with 220 volt receptacles for air conditioners in all of their rental houses. In the house occupied by plaintiff, this receptacle was placed in the window in question.
There was no evidence showing any defect in the condition of the window at the time of the commencement of the lease or at the time the air conditioning unit was installed. The evidence shows the rotting condition of the window sill and frame likely occurred after the commencement of the lease. Mr. Fontenot testified he had not noticed the rotten condition of the window, and it had never been called to his attention. He further stated that when the need for repairs arose, his wife would contact Mr. or Mrs. Bice to see that repairs were made. Mrs. Bice stated that about six weeks before the accident she noticed the rotting condition of the window frame and sill and that she contacted Mr. and Mrs. Fontenot. Mrs. Fontenot confirmed that Mrs. Bice had told her about the window needing repairing, and that she saw the window and noticed it was “soft”. She stated she so told her husband. Mr. Fon-tenot stated he was notified and looked at the window and felt that it needed repairs. He stated he did not think it was going to break and fall, but knew he had to change the sill. He also stated that even though he normally kept everything in good condition, he was busy and decided to fix the window after the weather cooled off. Mrs. Mire testified she had not noticed the window before the accident although she visited in the home and in the living room a number of times, but she saw the window after the unit had fallen, and the boards were rotten. Mr. and Mrs. Bice and Mr. and Mrs. Fontenot also testified to the rotten condition of the window framing. Photographs were introduced into evidence showing the condition of the window on the day of the accident. The evidence shows that the defendant had an insurance adjuster look at the condition of the window framing after the accident, but the adjuster was not called to testify at the trial. The window was repaired by Mr. Fontenot following the accident.
We shall first consider the law applicable to this case.
There are several articles of the Revised Civil Code which impose a duty upon the owner of a building to keep it in good repair, including Articles 670, 2322 and 2693-2695. The Code also imposes a responsibility for making certain repairs on the tenant in Article 2716, to-wit:
“The repairs, which must be made at the expense of the tenant, are those which, *506 during the lease, it becomes necessary to make:
* * * * * *
“To windows, shutters, partitions, shop windows, locks and hinges, and everything of that kind, according to the custom of the place.”
In interpreting Article 2716, it has been held that the last phrase in the article applied only to the preceding phrase, “everything of that kind”, and that it was not necessary to prove custom with respect to the items specifically named, such as “windows”. Hutchins v. Pick (La.App., Orl., 1935), 164 So. 173.
Article 2716 states the general rule of law as to the tenant’s duty to make certain repairs. The tenant is charged with making the minor repairs as enumerated, and if these minor defects arise during the existence of the lease and are not remedied by the tenant, it is the tenant’s negligence and not the negligence of the owner or lessor. Accordingly, the owner is not generally liable to a third person for the injuries caused a third person by the failure of the tenant to repair such minor defects which come into existence during the lease. Lowe v. Home Owners’ Loan Corporation, 199 La. 672, 6 So.2d 726.
However, we find that the facts of the case before us on appeal form an exception to the general rule. Upon renting the house to the plaintiff, Mr. Fontenot agreed to make all repairs which became necessary, including minor repairs. Having assumed the responsibility or duty of making such repairs, he was negligent in failing to repair the window within a reasonable time after it had been called to his attention that the repair was needed.
The cases cited by attorney for defendant relate to the responsibility of the tenant under Article 2716 and to the principle of law as stated in the Lowe case, supra. No cases were cited wherein the landlord had expressly agreed to make the minor repairs. There is no reason why the-parties could not enter into such an agreement. In such cases the burden is on the-tenant to clearly establish that such an agreement had been made. The evidence in this case clearly establishes such an agreement. We find that the evidence supports-a finding that the failure of Mr. Fontenot to repair the window was negligence, and' that such negligence was the proximate-cause of the injuries received by plaintiff’s son.
The defendant maintains that plaintiff was contributorily negligent. Counsel for defendant has called to the Court’s attention that there was a relationship between the parties, which would weaken the-value of the testimony of the witnesses. Mrs. Mire is the wife of plaintiff’s attorney. Mrs. Dave Fontenot is the aunt of plaintiff’s attorney. During the witnesses’ testimony, it was brought out that Mr. and Mrs. Fontenot had each made a conflicting statement that the defect in the window was called to their attention by the plaintiff. These prior conflicting statements were explained and retracted on the witness stand. Mrs. Fontenot indicated she made a mistake in her prior statement, and she later realized she had never spoken with plaintiff about the window, but only to Mrs. Bice. Also, Mr. Fontenot testified he had talked with plaintiff about a window fan that had broken, but not about the window where the air conditioning unit was placed. He had only talked with Mrs. Bice about the window. There are other minor discrepancies in the testimony. It is urged that plaintiff did in fact have knowledge of the defective condition of the window. However, there is no direct evidence showing such knowledge. It was denied by plaintiff, and the jury apparently believed the plaintiff was not aware of the defective condition of the window. Nor was there any direct evidence that the initial installation of the air conditioning unit was made in a faulty manner. From the evidence presented, we find no manifest *507 error in the holding that the plaintiff was free of contributory negligence.
We shall now consider the issue of damages. The defendant does not seriously dispute the proof of the special damages of $760.63 awarded to plaintiff, individually, which award is clearly substantiated by the evidence, but urges that the award for Jere J. Bice is excessive.
Jere J. Bice was seen in the emergency room of the hospital by Dr. Edward W. Phillips, Jr. following the accident. X-rays were taken. Dr. Phillips found Jay to have transverse and comminuted fractures in the left thigh, indicating there were chips at the site of the two major fractures. Under anesthetic, an operation was performed wherein a Stineman pin was inserted cross-ways in the upper part of the tibia for the application of traction. Jay was kept under traction in the hospital from October 27, 1964 until November 17, 1964. A cast was then applied which extended from the waist to his toes on the left side and from the waist to his knee on the right side. This cast was removed on January 12, 1965. During this time, Jay was completely bed ridden, and could not sit up. He had to be lifted from one place to another, and used a bed pan for elimination. A cart was constructed so that Jay could be placed on the floor and could move about somewhat in a prone position as though ’’swimming”. X-rays were taken on January 12, 1965, which indicated good early healing. After the cast was removed, crutches were used for two weeks. Dr. Phillips testified that on January 26, 1965, Jay walked with a pronounced limp. On February 23, 1965, he noted that Jay still walked with a slight limp. Jay was discharged from treatment on February 23, 1965, but returned again on December 21, 1965, with the complaint that the leg had been giving trouble. In the examination of December 21, 1965, Dr. Phillips found some atrophy, with the left thigh being one-half inch smaller in circumference than the right thigh. Also, Jay was unable to completely straighten the left knee as compared with the right. Jay’s left knee appeared to be more knock-kneed than the right, although the X-rays did not show any particular reason for this. Dr. Phillips instructed Jay to take exercises and to lift weights to improve the condition of his leg. The exercises were prescribed for an estimated period of three to six months. Dr. Phillips indicated that ordinarily a child of Jay’s age, with the type of fracture he sustained, would have been completely normal after a year, or by the time of the examination on December 21, 1965. Dr. Phillips thought that Jay should eventually make a complete recovery, but since his case was one of the exceptions where there was residual difficulty after a year, he could not state definitely that Jay would completely recover from his injuries.
The lay testimony' showed that Jay was quite active in sports, particularly in football and baseball, prior to his injury. Since the accident he has continued to engage in these sports, but has had some difficulties. His leg bothers him and hurts at times. He has less strength and control in running. When he is tired, he appears to drag his leg.
We have considered the cases cited by plaintiff and defendant. Although we feel that the award for Jere J. Bice of $7,300.00 was on the high side, we believe the ruling in the case of Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64, is applicable. We do not find there has been an abuse of the wide discretion vested in the jury, and, accordingly, hold that the award is neither inadequate nor excessive.
For the reasons assigned, the judgment of the district court is affirmed, and all costs of this appeal are assessed against the defendant.
Affirmed.
HOOD, J., dissents.