H. L. PROPERTIES, INC., a Florida corporation et al. Plaintiffs,

v.

AEROJET-GENERAL CORPORATION, a California corporation and United States of America, Defendants.

AEROJET-GENERAL CORPORATION, a California corporation, Third-Party Plaintiff,

v.

UNITED STATES of America, Third-Party Defendant.

No. 68–136–Civ–CA.*

United States District Court,
S. D. Florida,
Miami Division.

May 14, 1971.

---

* And consolidated cases Nos. 68–1192, 68–1232, 68–1233, 69–629, 69–630, 69–631, 69–670, 69–672, 69–673, 69–722, 69–1423, 69–1424, and 70–82–Civ–CA.

■■■■■■■■■■■■■■■■

A. Dan Killian, of Corlett, Merritt, Killian & Okell, Miami, Fla., for H. L. Properties, Inc.

Smathers & Thompson, Miami, Fla., for Aerojet-General Corp.

Gerald D. Freed, Atty., Torts Section U. S. Dept. of Justice, Washington, D. C., and Clemens Hagglund, Asst. U. S. Atty., Miami, Fla., for the United States.

## MEMORANDUM OPINION AND ORDER

ATKINS, District Judge.

THIS CAUSE came on for trial before the Court without a jury on April 27, 1971. The Court heard testimony, received exhibits, has reviewed the depositions of Benjamin A. Simmons, Jack D. Sohl, Willis Sprattling, Jr., and John Amaral as well as the Answers to Interrogatories Propounded by Aerojet-General Corporation to United States of America filed September 22, 1970 and is otherwise fully informed in the premises.

Subsequent to the pretrial conference but prior to trial the Court granted plaintiff's motion for summary judgment against the defendant Aerojet-General Corporation without opposition by said defendant. The trial, therefore, was limited to the question of liability of the United States of America (hereinafter the Government) pursuant to the Federal Tort Claims Act, Title 28 U.S.C.A. Section 2671, et seq. and Title 28 U.S.C.A. Section 1346.

■■■ It is well-established that the Government cannot be held liable without fault. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). However, under the rationale of Emelwon, Inc. v. United States, 391 F.2d 9 (5th Cir. 1968), cert. den. 393 U. S. 841, 89 S.Ct. 119, 21 L.Ed.2d 111, the Government could be held liable under either of two theories of Florida law, both of which impose liability upon an employer of an independent contractor for its own negligence.

The first theory of Florida law imposes a duty upon an employer who discovers a dangerous situation created by its independent contractor either to halt the operation or otherwise remove the danger. Maule Industries, Inc. v. Messana, 62 So.2d 737 (Fla.1953) ; Peairs v. Florida Publishing Co., 132 So.2d 561 (1st D.C.A.Fla.1961).

The second theory of Florida law imposes a non-delegable duty on the employer to exercise reasonable care to prevent harm to third persons when the independent contractor is performing inherently or intrinsically dangerous work. Florida Power & Light Co. v. Price, 170 So.2d 293 (Fla.1964).

Liability is sought to be imposed upon the Government by virtue of the August 29, 1966 contract between the National Aeronautics and Space Administration, an agency of the Government, and Aerojet-General Corporation concerning the design, fabrication and testing of an improved 260-inch SL–3 solid rocket motor. The contract provided that the subject rocket motor would be tested on or before June 30, 1967. In fact, such rocket motor was tested on June 17, 1967 at Aerojet-General Corporation's test-firing site located in South Dade County, Florida. The parties have stipulated that as a result of the test firing on July 17, 1967, the rocket motor emitted hydrogen chloride gas into the atmosphere which mixed with rain or moisture thus forming hydrochloric acid which caused some damage to the fruit and plants of certain of the plaintiffs. For the purposes of the trial on liability it was stipulated that the plaintiffs are owners or lessees of property located in Dade County, Florida. Additionally, it was stipulated that the plaintiffs have complied with the jurisdictional requirements of the Federal Tort Claims Act. Hence, plaintiffs may proceed against the Government.

■ The parties have likewise stipulated that the test-firing of the 260-inch SL–3 solid rocket motor on June 17, 1967 was an ultra hazardous activity and Aerojet-General Corporation has conceded that it was negligent. The Court finds both of these items to be the fact and considers that the ultrahazardous activity is at least what is meant by inherently dangerous within the meaning of the non-delegable duty rule of the *Price* case. The court finds that the Government had a non-delegable duty to assure that Aerojet-General Corporation performed its task in a non-negligent manner. The sole question for decision is whether the Government negligently breached this duty.

Under Article III of the contract between the defendants, NASA retained technical direction of the project. The evidence shows that this clause merely gave NASA the power to assure that the technical results of the test-firing would be as contemplated under the contract.

The contract also gave the Contracting Officer the authority both to terminate the contract and to impose upon Aerojet-General Corporation any safety and health requirements deemed necessary. The Court notes these provisions only to show that the Government had not relinquished total control of the operation to its independent contractor. Throughout the trial the Government asserted that it was bound by its contract which, it was argued, did not give the Government the right to cancel or postpone the test-firing of July 17. The evidence shows that NASA's only concern with these two clauses was additional expense to be incurred in a postponement of the test-firing and with the safety of those employees of both Aerojet-General Corporation and NASA involved in the project, respectively. It is not necessary to decide this point nor to resolve the total conflict between the testimony of the Aerojet-General Corporation witnesses and those of the government concerning the authority of Carl C. Ciepluch, the NASA project manager, to stop the test-firing.

Every witness who was present at the test-firing testified that throughout the morning of July 17, 1967 there was intermittent rain and that at the time of the test-firing (12 o'clock noon) there was a very light shower. The weather data sheet (Plaintiff's Exhibit 2) confirms this testimony and further demonstrates that the sky was overcast at about 1500 feet and winds were out of the south at about ten knots with gusts to thirty-four knots on the surface. The Court does not believe it necessary to review the evidence any further.

Aerojet-General Corporation, through Jack D. Sohl, was in virtual constant contact with the Homestead Weather Station and the FAA Miami Approach Control during the countdown stages. All of the pertinent weather data was available to Mr. Sohl and, in fact, was communicated to him. Mr. Bankaitas, the NASA sub-project manager, whose duty it was to monitor the work of Mr. Sohl, had this data available to him.

The effect of the prevailing weather conditions was three-fold: (1) the overcast sky inhibited diffusion of the hydrogen chloride gas into the atmosphere; (2) the rain mixed with the gas to create the damaging hydrochloric acid; and (3) the Southerly winds caused the rocket motor exhaust plume and, consequently, the hydrochloric acid fallout to move in a northerly direction over the property of the plaintiffs. It was clearly negligence to proceed with the test-firing under these weather conditions.

Further, the uncontradicted evidence is that the sole concern of all people involved in the project was that nothing should interfere with the collection of good test data. Whether, in particular, was a concern only in its effect upon photography and the performance of certain delicate data recording devices. It was determined, without objection by any NASA representative, that the light showers would not impede the success of the test-firing. No consideration was given at that point to the possible inju-

rious effect of the test-firing on plant and human life.

At some point in the planning stage of the project employees of Aerojet-General Corporation considered the possible harmful effect of a test-firing upon third persons and their property. There had been test data recorded at two prior test-firings at the same site. This data indicated that the hydrogen chloride gas was safely diffused into the atmosphere without any harmful effects. Assuming arguendo that the defendants could have, under some set of facts, relied upon this test data they certainly were not justified in this case. First, the largest rocket of the two tested prior to July 17, 1967 required only 16,000 pounds of propellant while the rocket motor test-fired on that day required over 1,600,000 pounds of propellant. Second, no one connected with either defendant knew what the weather conditions were at the time the test data was collected. Mr. L. D. Van Vleck testified to the effect that none of the weather conditions prevailing on June 17, 1967 prevailed at the prior test-firings upon which the test data was compiled. Therefore, the test data relied upon was of little significance in assessing the potential for damage to third persons and their property.

■ The Court finds that the Government, in contracting with Aerojet-General Corporation for the performance of an inherently dangerous project, had a non-delegable duty to exercise reasonable care to prevent harm to third persons caused by Aerojet-General Corporation. The Government made no attempt to take any precautions whatever to protect third parties nor did it impose any restrictions or control on its independent contractor to take such precautions. Indeed, no consideration at all was given to the safety of third parties. Both Mr. Lundin and Mr. Ciepluch, as well as each employee of Aerojet-General Corporation admitted that it was tantamount to common knowledge among engineers and scientists that hydrogen chloride gas when emitted by the ex-

haust of the rocket motor could mix with rain or moisture thus becoming hydrochloric acid. Yet no meteorologist or industrial hygienist was consulted at any stage of project planning. This constitutes a complete failure to exercise the reasonable care incumbent upon the Government.

Additionally, it should be noted, the NASA representatives were continually advised of the technical progress of the project and had at their disposal all of the facts necessary to determine the danger involved. In fact, several NASA representatives were present at a briefing session on the day prior to July 17, 1967. These same representatives were present at the test-firing for the professed purpose of monitoring and observing the countdown and the test operations.

Therefore, the Government must be held liable for the breach of its non-delegable duty under the second theory of Florida law. Regarding the first theory of Florida law, adamantly advanced by Aerojet-General Corporation, it is necessary for the Court to find that the Government have knowledge that the independent contractor has created a dangerous situation. Aerojet-General Corporation had surely created a dangerous situation but the question is whether the Government had the requisite knowledge. There is no evidence to show that the Government actually appreciated the danger created. The Government asserts it must have this type of actual knowledge to be found liable. The Government further asserts that it must also be found to have control sufficient to halt the operation or otherwise remove the danger. Having found liability under the second theory it is unnecessary for the Court to decide whether the Government can be bound on the first theory.

■ The defendants are in disagreement about the effect of their liabilities vis a vis the other defendant. The Court finds that each is liable because of its own neglect of duty and failure to exercise reasonable care therefore

making both defendants jointly and severally liable to the plaintiffs. Putnam Lumber Co. v. Berry, 146 Fla. 595, 2 So.2d 133 (1941); Breeding's Dania Drug Co. v. Runyon, 147 Fla. 123, 2 So. 2d 376 (1941); Bialkowicz v. Pan American Condominium No. 3, Inc., 215 So.2d 767 (3rd D.C.A.Fla.1968), cert. den. 222 So.2d 751 (Fla.1969). It is therefore,

Ordered and adjudged that discovery is hereby opened on the issue of damages. A pretrial conference on damages will be set by separate order and trial thereafter scheduled.