Michael A. WILSON by and through his mother, Nell Marie Coker, and Nell Marie Coker, Individually

v.

The UNITED STATES of America and Dudley Downing and Associates, Inc.

Civ. A. No. 76–2805.

United States District Court, E. D. Louisiana.

July 20, 1977.

As Amended July 25, 1977.

Robert O. Homes, Jr., Metairie, La., for plaintiff.

Gerald J. Gallinghouse, U. S. Atty., and Robert L. Boese, Asst. U. S. Atty., New Orleans, La., for United States.

Morphy, Holbrook & Faulkner, Steven K. Faulkner, Jr., New Orleans, La., for Dudley Downing & Associates, Inc.

CHARLES SCHWARTZ, District Judge.

This matter came on June 15, 1977 on motion of defendant for summary judgment, at which time the matter was taken under submission pending the filing of supplemental memoranda by the parties. Now, after due consideration of the argument and memoranda of counsel, the record and the law, the Court finds and rules as follows:

The complaint alleges that on or about September 1, 1975, plaintiff's family leased the premises 315 West Loyola Drive, Kenner, Louisiana, and subsequently, on or about September 14, 1975, Michael Wilson sustained an injury as the result of a broken bedroom window. The Government's list of undisputed facts, in which plaintiff concurs, is as follows:

1. At the time of plaintiff's injury, on or about September 14, 1975, the property at 315 West Loyola Drive, Kenner, Louisiana, wherein this injury occurred, was owned by the United States of America through the Department of Housing and Urban Development (HUD).

2. HUD entered into a contract with Dudley Downing and Associates, Metairie, Louisiana, to serve as Area Management Broker. This contract commenced on November 1, 1973 and was to terminate on October 31, 1976. The injury plaintiff complains of occurred while said contract was in effect.

3. By Article 6 of the above contract and the Amendment to Schedule A, the Area Management Broker was responsible for supervision of all repair, maintenance and operating activities of the building and grounds located at 315 West Loyola Drive, Kenner, Louisiana.

4. Pursuant to Article 12(c) of the above contract and Amendment, the property of the United States of America located at 315 West Loyola Drive, Kenner, Louisiana, was to be under the custody and control of the Area Management Broker, Dudley Downing and Associates, who accepted full responsibilities therefor.

The Government asserts that the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.), by its express terms, was never intended to encompass the negligent acts or omissions of independent contractors, such as Dudley, Downing and Associates (hereafter "Associates"). Moreover, defendant contends that the Government cannot, under any circumstances, be liable under a theory of strict liability founded on state law inasmuch as a finding of fault on the part of the employee of the United States is a necessary prerequisite to holding the United States liable under the Federal Tort Claims Act.

Plaintiff admits that he does not seek to hold the United States liable for any tortious acts or omissions of Associates. Since the Federal Tort Claims Act specifically adopts the law of the state where the injury occurs as the controlling law, plaintiff further contends that the owner of the property (United States) may be liable for its own negligence (LSA–C.C. art. 2315) or absolutely liable (LSA–C.C. art. 2322).

Article 2322 of the Louisiana Civil Code provides:

"The owner of a building is answerable for the damages occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

Preliminarily, the Court finds Art. 2322 inapplicable to the proceeding at hand for the reason that "ruin," as used in the context of the article, pertains to the actual fall or collapse of the building or one of its substantial component parts. See *Davis v. Royal-Globe Insurance Companies,* 257 La. 523, 242 So.2d 839, 841 (1970); *Parker v. Brawley,* 306 So.2d 793 (La.App. 2nd Cir. 1975). In *Davis, supra,* where plaintiff's children had consumed paint flakes which had fallen from the apartment ceiling, the Supreme Court of Louisiana stated:

"Falling paint flakes from an apartment ceiling were never intended by this article to be considered the 'ruin' of a building, which would impose the unduly harsh burden of absolute liability upon the owner. Where it is alleged, as here, that the injury is to a third person lawfully on the premises from a dangerous condition which the lessor has permitted to exist, then the appropriate basis for the decision is Articles 2315 and 2316. Comment, 39 Tul.L.Rev. 798, 837 (1935); Comment, 16 Tul.L.Rev. 448, 449 (1942); Comment, 7 La.L.Rev. 406 (1947)."

Similarly, a broken glass window does not constitute "ruin" within the purview of LSA–C.C. art. 2322.

Generally, however, under Louisiana law, the owner is strictly liable for lessee's injuries which are caused by a defective condition of the premises, provided such injuries do not arise from the fault of the lessee. LSA–C.C. art. 2695;[1] *Krennerich v. WCG Investment Corporation,* 278 So.2d

---

1. Article 2695 provides:

"The lessor guarantees the lessee against all vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."

842 (La.App. 3rd Cir. 1973); *King v. All-state Insurance Co.,* 224 So.2d 42 (La.App. 1st Cir., 1969), writ ref., 254 La. 808, 227 So.2d 144. Thus, in *Anslem v. Travelers Insurance Company,* 192 So.2d 599, 600 (La. App. 3rd Cir., 1966) Judge Tate (now a Justice of the Louisiana Supreme Court) observed the following principles:

An owner-lessor is held to strict liability, i. e., to liability without fault, for personal injuries sustained by his tenant or others through the defective condition of the premises; neither the landowner's ignorance of the defect nor its latency will defeat the injured person's recovery. LSA–Civil Code Articles 670 and 2322 (owner), 2693 and 2695 (tenant); *Morgan v. American Indemnity Co.,* La.App. 1 Cir., 180 So.2d 429; *Turner v. Aetna Casualty and Surety Co.,* La.App. 2 Cir., 175 So.2d 304, 305; *Daire v. Southern Farm Bureau Casualty Ins. Co.,* La.App. 3 Cir., 143 So.2d 389, certiorari denied. See also *Bice v. Pennsylvania Millers Mutual Ins. Co.,* La.App. 3 Cir., 188 So.2d 502.

On the other hand, not every defect causing injury is actionable, only those of a nature reasonably expected to cause injury to persons using ordinary care under the circumstances. *Morgan v. American Indemnity Co.,* cited above; *St. Julien v. Fireman's Fund Ins. Co.,* La. App. 3 Cir., 127 So.2d 245. Likewise, although the injured person's prior knowledge of the defective condition will not by itself defeat his recovery, his contributory negligence may do so if the injured person was fully aware that the defect was so dangerous that the premises could not be used even with the exercise of due care. *Gilliam v. Lumbermens Mutual Casualty Co.,* 240 La. 697, 124 So.2d 913; *Turner v. Aetna Casualty and Surety Co.,* cited above; *Hill v. Travelers Insurance Co.,* La.App. 1 Cir., 128 So.2d 277."

Lessor, however, can exonerate himself if he shows that the defect arose through the negligence or fault of the lessee. *Ambrosia v. Cherokee Insurance Co.,* 332 So.2d 559 (La.App. 4th Cir., 1976), writs ref., 337 So.2d 520; *Pollard v. Roberts,* 306 So.2d 801 (La.App. 2nd Cir., 1975). The terms of Art. 2695 provide that lessor guarantees the lessee against all vices and defects of the thing leased "provided they do not arise from the fault of the lessee." Hence, it has been held that liability will not be imposed upon the owner-lessor where the injury results from a defective condition which the tenant himself had the obligation to keep in repair, and which could, under certain circumstances, amount to a superceding negligence by the parent in failing to keep a proper lookout for the child's wellbeing. See *Davis v. Royal-Globe Insurance Companies,* 223 So.2d 912 (La. App. 4th Cir., 1969), reversed on other grounds, 257 La. 523, 242 So.2d 839, 43 A.L.R.3d 1261, cert. den., 403 U.S. 911, 91 S.Ct. 2208, 29 L.Ed.2d 688.

LSA–C.C. Art. 2716 enumerates particular repairs which a lessee has the duty to make, including ". . . replacing window glass, when broken accidentally, but not when broken either in whole or in their greatest part by a hail storm or by any other inevitable accident . . . ." Furthermore, the lessee under the same article is responsible for repairs to "windows, shutters, partitions, shop windows, locks and hinges, and everything of that kind, according to the custom of the place." Also see *Daniel v. Zurich Insurance Co.,* 184 So.2d 773 (La.App. 2nd Cir., 1966). Accordingly, a landlord is not liable to a tenant for injuries stemming from a defective window condition such as broken window glass. See *Brodtman v. Finerty,* 116 La. 1103, 41 So. 329 (1906); *Daniel, supra; Hutchins v. Pick,* 164 So. 173 (La.App., Orls., 1935); Also see Comment, "Article 2322 and the Liability of the Owner of an Immovable," 42 Tul.L.Rev. 178, 181 (1967).

The Court concludes that, assuming arguendo all the factual allegations of plaintiff's complaint to be true, it was the lessee's (*and not the lessor's*) duty under LSA–C.C. art. 2716 to maintain the windows of the premises in good condition. Accordingly, the Government cannot be held strictly liable for the injuries sustained

by Michael A. Wilson. Moreover, the Federal Tort Claims Act allows recovery from the United States only for the *negligent* acts or omissions on the part of an employee of the United States. 28 U.S.C. § 2672. Thus, the Government cannot be responsible for a claim pursuant to the Federal Tort Claims Act when premised only on strict liability. *Dalehite v. United States,* 346 U.S. 15, 45, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Laird v. Nelms,* 406 U.S. 797, 798, 799, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972), rehearing den., 409 U.S. 902, 93 S.Ct. 95, 34 L.Ed.2d 165; *Orr v. United States,* 486 F.2d 270, 274, n. 5 (5th Cir. 1973); *Emelwon, Inc. v. United States,* 391 F.2d 9 (5th Cir. 1968), cert. den., 393 U.S. 841, 89 S.Ct. 119, 21 L.Ed.2d 111; *Gowdy v. United States,* 412 F.2d 525, 535 (6th Cir. 1969), cert. den., 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed. 425 rehearing den., 396 U.S. 1063, 90 S.Ct. 750, 24 L.Ed.2d 756; *H. L. Properties, Inc. v. Aerojet-General Corp.,* 331 F.Supp. 1006 (D.C. Fla.1971), aff'd, 468 F.2d 1397 (5th Cir., 1972).

Turning now to the averment that the Government was negligent, the Court notices, as it did above, that "[p]laintiff's complaint in this case does not seek to hold the Government liable for the tortious acts of Dudley Downing." (Plaintiff's original memorandum, at p. 4). Instead, the plaintiff claims that certain regulations were unreasonable in that Associates, while informed of the defect in question, was unable to repair such defects due to the excessively burdensome procedures and "red tape" incidental to the regulations. In this manner, among others, plaintiff claims that the Government was negligent in at least contributing to the cause for plaintiff's injury.

The agreement between the United States and Associates, entitled "Area Management Contract Articles," provides, among other things, that the day-to-day administrative details of operation under the contract shall be supervised by the Federal Housing Administration Insuring Office (Art. 5); that the Government will furnish "all services, facilities, materials and labor . . ." for the "(4) LABOR:

The required repair, reconditioning, maintenance, or improvement of the project, including such on-site project staff employees as may be authorized in writing by the Government from time-to-time to provide for the management, operation, maintenance, and repair of the property." (Art. 6(b)); that the Contractor shall arrange for and supervise all necessary functions including "Continuing maintenance of buildings and grounds" (Art. 6(c)(10)); and that "All project personal property belonging to the Government shall at all times be under the custody and control of the Contractor who accepts full responsibilities thereof . . . ." (Art. 12(c)).

The Court is of the opinion that at present the record is not sufficient to warrant a determination as to whether or not the Government might be liable in negligence, and particularly as to whether certain governmental regulations hindered Associate's ability to make the repairs. Accordingly, with respect to the claims based on the theory of negligence the motion for summary judgment is DENIED, reserving unto the Government the right to reurge same after further discovery and/or submission of additional affidavits with respect to this issue. The motion for summary judgment filed by United States with respect to the claims founded on a theory of strict liability is hereby GRANTED.