**464**

Perry S. McKAY, Charles C. McKay and The First National Bank of Denver as Personal Representatives of the Estate of Marcus F. Church, Deceased; Charles Church McKay and Edward A. Landry, Successor Trustees to Marcus F. Church, Trustee, Deceased; William C. Ackard; Samuel Butler, Jr.; and Butler Investments, Ltd., a limited partnership, Appellants,

v.

UNITED STATES of America; Dow Chemical Company; and Rockwell International Corporation, Appellees.

and

GREAT WESTERN VENTURE, a Colorado limited partnership, Appellant,

v.

UNITED STATES of America; Dow Chemical Company and Rockwell International Corporation, Appellees.

Nos. 82–1771, 82–1816.

United States Court of Appeals, Tenth Circuit.

March 23, 1983.

Howard Holme, Fairfield & Woods, Denver, Colo. (Charles J. Beise and Peter F. Breitenstein, Fairfield & Woods, Denver, Colo., with him on briefs), for appellants.

Jake J. Chavez, Sp. Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., James E. Elliott and Michael J. Barbo, Elliott & Barbo, Wheatridge, Colo., and William F. Schoeberlein and Joseph J. Bronesky, Sherman & Howard, Denver, Colo., with him on brief) for appellees.

Before HOLLOWAY and DOYLE, Circuit Judges, and BROWN *, Senior District Judge.

WILLIAM E. DOYLE, Circuit Judge.

In these actions the plaintiffs allege that they are land owners surrounding the so-called Rocky Flats Plant, which manufactures, on behalf of the United States government, nuclear weapons[1] or nuclear ammunition. Plaintiffs' main complaint is that the land which they own or in which they have an interest has suffered from the presence of the Rocky Flats plant; that the soil has become infested with nuclear material. Two fires early on in the operation of the plant are said to have caused a great deal of damage to the land but much of the damage allegedly is the result of the actual operation of the plant.

Dow Chemical Company and Rockwell International Corporation are two of the ap-

---

* Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

1. The original plant site, which the United States acquired in 1951, was expanded in 1974 and 1975 and now totals 6,500 acres. The Atomic Energy Commission or its successors (collectively, the "Atomic Energy Commission") regulates the plant under the Atomic Energy Act of 1954, as amended, 42 U.S.C. §§ 2011–2281. Although the actual operation of the plant is accomplished through private companies under management contracts, no work is performed for any private entities. Dow managed and operated the plant from July 1, 1952 through June 30, 1975; Rockwell has done so since July 1, 1975. The plant manufactures parts of nuclear weapons using large quantities of radioactive uranium 238, uranium 235, plutonium and americium 241. These are source, byproduct or special nuclear materials as defined in the Act, 42 U.S.C. §§ 2014(e)(1) and (aa).

pellees in the case besides the United States of America and they deny injuring the land but they also deny that any remedy exists; they maintain that there is a lack of jurisdiction in the courts to allow actions such as this to be prosecuted. Their argument is that the United States has preempted all court jurisdiction in this area; that to allow a remedy under the Federal Tort Claims Act or remedy arising under state law would be invalid because of the peculiar nature of the activity.

The trial court concluded that the nature of the case precludes a lawsuit not only because of preemption but in addition by reason of the related basis that the issue is a political one which precludes private actions. *Good Fund Ltd.–1972 v. Church,* 540 F.Supp. 519, 546–48 (D.Colo.1982).

Attention should be called at the outset to the fact that this action was filed several years ago and that there has been court activity in regard to it for a great number of years. Finally, the court, after having heard a great deal of evidence over a long period of time, some six years, determined that the defendants' motion for summary judgment should be granted in favor of the United States, Dow Chemical and Rockwell International Corporation. The chief legal basis for the trial court's action was that the suit was essentially a political one which infringed on the exclusive rights of the United States to govern the operation of nuclear activity.

*Whether or not this is an area in which the plaintiffs can litigate.*

Various remedies are invoked by the plaintiffs. We have mentioned that some of the claims arise under the Federal Tort Claims Act in which the governing law would be that of the state. Dow and Rockwell, of course, are not subject to suit under the Federal Tort Claims Act, but the actions against those two defendants are also based upon state negligence law. The parties seek in addition to assert takings claims despite the Tucker Act. This, however, is plainly inapplicable. The Claims Court has exclusive jurisdiction to hear matters which arise under this statute and we see

no merit in the attempt to bring in this Act under the guise of pendent jurisdiction. Plaintiffs further contend that a remedy exists directly under the Constitution. This is more feasible than the Tucker Act.

Numerous claims on behalf of the several plaintiffs are set forth in the record herein. These are against the United States and the two contractors, Dow and Rockwell. Included are negligence, trespass and nuisance. Liability without fault, or strict liability, and the constitutional violations mentioned above are also alleged.

Exemplary damages are requested against the United States, Dow and Rockwell and there is a demand for a declaratory judgment that the defendants have taken the plaintiffs' property.

The prayer is for attorneys fees, $26,000,-000 in actual damages and $160,000,000 exemplary damages against the defendants.

The claims against the state and the county are that there has been in effect a taking of economically viable uses of plaintiffs' property in violation of the United States Constitution. This claim is alleged to arise under 42 U.S.C. § 1983. It is against Colorado and Jefferson County. Numerous motions and briefs have been filed by the several defendants. The record is indeed voluminous.

*The trial court's decision.*

Basically the trial court ruled out these claims. The court said that their recognition would violate the preemption principle because the various federal statutes pertaining to the processing of nuclear material were within the exclusive power of the legislative and executive branches of the federal government. The trial court said: "The long struggle in this litigation has changed my thinking and I am now persuaded that the government's position is correct, at least in the absence of a showing of personal injury to any specific person." 540 F.Supp. at 545. Thus the judge has made a distinction as between property injury and personal injury and holds that no doubt the latter kind of injury could be pursued. If preemption exists it would

likely apply to personal injuries as well as to the taking of property. To bolster its conclusion the trial court relied on the fact that the United States has extensive powers in matters having to do with the common defense of the country. The judge has outlined the area of government which impliedly preempts every kind of litigation by private citizens for injuries suffered, except the personal injury. He maintains that the courts are restricted to the extent mentioned. The judge also stated that "[s]elf limitation by the judiciary has come in the form of the 'political question doctrine' as explained in *Baker v. Carr,* 369 U.S. 186, 217 [82 S.Ct. 691, 710, 7 L.Ed.2d 663] (1962)." 540 F.Supp. at 546. The judge added that the primary jurisdiction doctrine is another form of judicial restraint, one which is more complicated than the political question doctrine since it involves congressional delegation of discretion to an agency. This, the court said, will arise when Congress has passed a statute regulating an area by means of supervision of an expert administrative agency. The supervision involves factual determinations aided by the special expertise of the agency. Once the agency has acted, the court must only then determine the extent it will defer to that special expertise in the review of the agency's actions.

Also mentioned by the judge was the so-called *Feres* doctrine as enunciated in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which holds that a service man injured as the result of activity incident to his service may not sue the United States for compensation under the Federal Tort Claims Act. To allow a suit, the *Feres* court points out, would have a deleterious effect upon military discipline. But more than that it would create an impossible situation wherein every person who received an injury in the military service, in combat or otherwise, would have the right to sue the government.

The serviceman in *Feres* had an administrative remedy. The plaintiffs in our case are not in the army. They are citizen property owners and have no administrative alternative to their present suit.

The conclusion of the judge was that the claims against the United States, Dow and Rockwell had to be dismissed for lack of jurisdiction. The court recognized that there were other claims of the parties in the three cases which could possibly be tried.

The issues on appeal follow:

*First,* whether the doctrine of preemption applies to the actions here which are discussed above.

*Second,* whether this is a question within the political question doctrine, i.e. whether an action for damages suffered by an individual citizen cannot be brought to court if the injury is suffered as a result of or in the course of manufacture of weapons of war or ammunition.

I.

*Does the undertaking by the federal government in manufacturing, through contractors, weapons and parts of weapons, using atomic materials such as plutonium, results in the preemption which embraces and eliminates private civil actions for damages incurred or injuries suffered?*

First, the appellees cite and rely upon authorities such as *Train v. Colorado Public Interest Research Group,* 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976) and *Northern States Power Company v. Minnesota,* 447 F.2d 1143 (8th Cir.1971), *aff'd. mem.,* 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972). However, neither of these decisions bears on the present case for the reason that there is no interference with the regulatory authority of the United States.

Second, there exists no administrative remedy which operates in lieu of a court action. The conclusion in *Train* was that the Federal Water Pollution Control Act gave the AEC control over the discharge of the source of the by-product in special nuclear materials, the pollutants subject to regulation under the F.W.P.C.A. did not include such materials and that the E.P.A. administered interaction in accordance with the statutory mandate in declining to regu-

late the discharge of these materials. So this was a holding that the AEC had a limited control rather than an exclusive one. Accordingly it does not govern the present case which is concerned with violation of private rights, rights in which individual damages are sought from the manner of handling the dangerous materials.

The decision in *Northern States Power Company v. Minnesota, supra,* supports the contention of plaintiffs. The dispute in *Northern States Power Co.* was a regulatory conflict. The issue was whether the Atomic Energy Commission had authority to regulate radioactive releases by nuclear power plants and whether it was exclusive so as to preclude a state action. The district court ruled that the state did have authority to regulate in this area. The court of appeals reversed. It held that the federal government had exclusive authority under the doctrine of preemption to regulate construction and operation of nuclear power plants, including regulation of the level of radioactive effluent discharged from the plants. The analysis of the Eighth Circuit in *Northern States Power Co.* shows that the preemption doctrine arises in the context of conflict between the state and federal government where the question is whether the exclusive power to regulate belongs to the state or the United States. The court said that the preemption doctrine required a determination as to what the intent of Congress was in conferring authority upon the federal government. In this instance it was held that the intent of the Congress was to grant exclusive authority to the federal government to regulate licensing and day to day activity in this sensitive area of regulating radioactive releases by nuclear power plants. This does not say that persons injured through negligence or wantonness are henceforth to be deprived of a remedy.

A very recent decision of this court considered the very question which we now address, namely whether this preemption in the regulatory area precludes the exercise by individual citizens of their rights to litigate in court. Both the majority and the dissenting opinions in *Silkwood v. Kerr-McGee Corp.,* 667 F.2d 908 (10th Cir.1981)

*appeal pending,* —— U.S. ——, 103 S.Ct. 721, 74 L.Ed.2d 948 (1983), concluded that in the circumstances presented in that case the individual lawsuit for property damage was neither precluded nor preempted. Both the majority and the dissenting opinion recognized that Congress had never intended to preclude actions based upon state tort law under the Federal Tort Claim Act. There were demands for damages as a result of personal injuries. But these were rejected by the majority based upon its conclusion that the private lawsuit for personal injuries which occurred offsite was preempted by the workmen's compensation laws.

The majority did recognize that the Price-Anderson Act which undertakes to grant relief in limited instances, 42 U.S.C. § 2210 (1970), did not preempt the private lawsuits such as those with which we are presently concerned. The majority opinion considered the legislative history of the Price-Anderson Act and this demonstrated that preemption is limited to an actual conflict between the respective remedies. The history acknowledged that the intent of Congress was that the Act should preempt state tort law only to limit liability for damages caused by major nuclear incidents, *id.,* at 921. In the less severe nuclear accidents " 'a claimant would have exactly the same rights he has today under existing law—including perhaps, benefit of a rule of strict liability if applicable State law so provides.' " *Id.,* quoting S.Rep. No. 1605, 89th Cong., 2d Sess., *reprinted in* [1966] U.S.Code Cong. & Ad.News at 3212. *See also Silkwood v. Kerr-McGee Corp.,* 485 F.Supp. 566, 572–75, 585 (W.D.Okl.1979), *rev'd. in part and aff'd. in part,* 667 F.2d 908 (10th Cir.1972).

The decision of the Eighth Circuit in *Northern States* recognized that state tort law principles are applicable, at least to some extent, in the off-site damages cases. This was demonstrated in both the majority opinion and the dissent in *Silkwood, supra* at 920, 926.

The majority said that a finding of preemption would have left Silkwood without any remedy. The reason was that the

Atomic Energy Commission lacked authority to compensate victims of a less than "extraordinary" nuclear accident, and: "Clearly there is a need for such a remedy". *Id.,* at 920.

Relying on Oklahoma case law together with Prosser and the Restatement (Second) of Torts concerning the liability of operators of nuclear plants, the majority in *Silkwood* held that the trial court properly directed the jury to return a verdict for $5,000 against Kerr-McGee for property damages resulting from plutonium contamination. This ruling concluded that: (1) the Atomic Energy Act did not preempt state tort law because this compensatory tort liability would not interfere with federal regulation of the plant; (2) the Price-Anderson Act did not preempt state tort law because the plutonium escape there was not an extraordinary nuclear accident, and therefore; (3) Kerr-McGee's use of plutonium in its nuclear fuel manufacturing plant subjected it to strict liability under Oklahoma tort law. *Id.,* at 921–22.

One limitation on this ruling expressed by the *Silkwood* majority was that "[i]mposing a state tort law rule of strict liability for nuclear-related property damage occurring off the plant site might, in some instances, encroach upon federal regulations setting effluent or other standards." *Id.,* at 920. The majority also ruled that liability for *punitive* damages would be an instance in which state tort law would interfere with federal regulation of Kerr-McGee's operations in a manner over and beyond the Price-Anderson Act. *Id.,* at 922–23. The dissent disagreed with this conclusion. It held that the award of exemplary damages occupies the same footing as an award for actual damages. It does not constitute the exercise of regulatory power by a sovereign city or state. *Id.,* at 929.

■ Accordingly, whether the Atomic Energy Act could preempt state law liability depends, at least in this circuit, on a fact situation and a determination that the state action at issue "competes substantially with the [Atomic Energy Commission] in its regulation of radiation hazards associated with plants having nuclear material." *Id.,* at 923.

■ Thus there is no preemption in the abstract. It must be specified and positive. *See Northern States Power Co., supra.* In the *Silkwood* case there was no effort to carry out any regulation which could collide with the regulation that was carried out by the NRC or the EPA. The issue expressed in terms of the *Silkwood* standard is whether the subjecting of the United States and the operators of the Rocky Flats plant to claims for compensatory and exemplary damages is an impermissible instance in which state tort law would encroach on the federal government's regulatory function. The dissent in *Silkwood* acknowledged that the area of nuclear licensing and regulation is preempted. *Id.,* at 929.

■ There are no legally significant facts that distinguish the claims in our case from those upheld in *Silkwood* or that justify dismissing our plaintiffs' compensatory damage claims. The different nature of the two plants should not grant immunity to the government defendants. The political question discussion below concludes that despite the importance of national defense, weapons manufacturers are not shielded from liability for their negligence. This country also has urgent energy needs, yet this court did not believe that gave Kerr-McGee special immunity:

We do not think imposition of tort liability in the instant case, in which a quantity of plutonium has escaped the plant site and caused damage, will significantly interfere with federal regulation of Kerr-McGee's plant. 667 F.2d at 920.

That holding applies here as well.

II.

*Does the Tucker Act permit the district court to assert pendent jurisdiction over the plaintiffs' taking claims?*

■ Under the Tucker Act claims which exceed the amount of $10,000 and which did not sound in tort are within the exclusive jurisdiction of the Claims Court, 28

U.S.C. §§ 1346(a), 1491 (Supp.1983). Plaintiffs urge that the district court has power to adjudicate their Tucker Act claims under a pendent jurisdiction theory. Although there are no Tenth Circuit decisions on point, two other circuits have considered the pendent jurisdiction argument and have rejected it. *Ware v. United States,* 626 F.2d 1278, 1287 (5th Cir.1980); *Lenoir v. Porters Creek Watershed District,* 586 F.2d 1081, 1087 (6th Cir.1978) ("pendent jurisdiction has no application to a claim against the United States"). *See also Sanborn v. United States,* 453 F.Supp. 651, 655 (E.D.Cal. 1977). ("[t]his court cannot, by using the judge-made doctrine of pendent jurisdiction, waive the immunity of the United States where Congress, the constitutional guardian of this immunity, has declined to do so.") Moreover, in its final footnote to *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 94 n. 39, 98 S.Ct. 2620, 2641 n. 39, 57 L.Ed.2d 595 (1978), the Supreme Court indicated that the availability of Tucker Act remedies invalidates Just Compensation Clause takings claims arising from nuclear accidents.

The trial court properly rejected the Tucker Act argument.

### III.

*Does the political question or separation of powers doctrine preclude judicial relief against the government for damages caused by radiation emissions from the Rocky Flats weapons plant?*

■ The opinion of the district court concluded that the political question and separation of powers doctrines required dismissal of the cases; that these doctrines rendered it inappropriate to grant judicial relief. The trial court said:

The primary dispute in this litigation arises because the Congress and a succession of Presidents have determined that nuclear weapons are necessary for the national defense and they have selected the Rocky Flats Plant as a place to produce components of such weapons. Those decisions are not reviewable in this court at this time.... It is my consid-

ered view that the determination of the existence of [radiation] hazards and the acceptability of them are also political decisions for the Congress and the President. 540 F.Supp. at 547–48.

It is true that there are political aspects present in, for example, making the decision to manufacture nuclear components but this does not reach beyond the actual decision for purposes of making it a political question. Nor does it rule out all the possible remedies which are available to people who are either physically hurt or materially hurt. Thus the political question theory and the separation of powers doctrines do not ordinarily prevent individual tort recoveries. Congress and several presidents have also determined that antitank explosives, highly explosive photo-flash cartridges, and nighttime illuminants (flares) are necessary to national defense. Nevertheless, the Third, Fifth, Eighth and Ninth Circuits have not hesitated to hold the government responsible under the Federal Tort Claims Act for injuries arising out of the production of such hazardous materials. *Madison v. United States,* 679 F.2d 736 (8th Cir.1982) (explosion of photo-flash cartridges); *Aretz v. United States,* 604 F.2d 417 (5th Cir.1979) (trip flare fire); *Toole v. United States,* 588 F.2d 403 (3d Cir.1978) (explosion of antitank explosive); *United States v. Babbs,* 483 F.2d 308 (9th Cir.1973) (combustible cartridge fire); *Pigott v. United States,* 451 F.2d 574 (5th Cir.1971) (damage caused by NASA rocket test); *H.L. Properties, Inc. v. Aerojet-General Corp.,* 331 F.Supp. 1006 (S.D.Fla.1971), *aff'd.,* 468 F.2d 1397 (5th Cir.1972) (per curiam) (hydrochloric acid caused by rocket emissions resulting in damage to crops); *Kuhne v. United States,* 267 F.Supp. 649 (E.D.Tenn. 1967) (exposure to radiation while manufacturing nuclear bomb material).

The Fifth Circuit stated in *Aretz,* "[t]he Army cannot by regulation or contract displace the liability which Congress has authorized" in the FTCA. *Aretz, supra* at 430–31. And thus the question, does the same reasoning apply here? We conclude that it does.

## IV.

*Insufficiency of the trial court's political question rationale.*

In the case of *Colgrove v. Green,* 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946) the Supreme Court considered the issue of legislative or congressional apportionment as to whether it was a political issue. In *Colgrove* there was a controversy growing out of an Illinois apportionment law that resulted in congressional districts that were unequal in population. There was inequality in population in the two districts and the petitioner sought to have the apportionment laws declared unconstitutional and to obtain an injunction against further elections.

Three justices of the seven participating in the decision took the position that the malapportionment was political and thus non-justiciable. The concurring justice disagreed with this reasoning but concurred in the result on the ground that it would be inequitable to issue an injunction. The three dissenting justices thought the question justiciable and would have granted the relief sought. Thus, though the case was dismissed, the majority of the participating justices were of the view that the federal courts had the power to determine whether apportionment was constitutional.

Thereafter other tests on apportionments and similar state laws were, with one exception, unsuccessful. This, according to Charles Alan Wright in his Third Edition, Law of Federal Courts, was finally resolved in 1962 in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). *See* Wright, Federal Courts (3d ed.) § 14 (1976). There plaintiffs were qualified voters from populous counties in Tennessee. They sued in federal court and claimed that the existing apportionment of the state legislature provided inequality of representation and that the resulting discrimination was a violation of the equal protection of the laws. The district court dismissed the complaint for lack of jurisdiction of the subject matter for want of a justiciable issue. The Supreme Court reversed.

The Court outlined the standards applicable to the political question as follows:

Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. at 217, 82 S.Ct. at 710.

Where, as here, the case is a civil one brought by injured parties no such remedy can be fulfilled under any departmental ruling nor could there be an appeal from any such ruling. It is difficult to conceive this as a political issue. The standards of *Baker v. Carr, supra,* give no indication that there exists a textually demonstrable constitutional commitment of the issues raised in plaintiffs' claims to a coordinate political department, nor is there a lack of judicially discoverable and manageable standards for resolving them. There is no necessity for obtaining a policy determination of a nonjudicial character in order to proceed with the case. Similarly the impossibility of the court undertaking independent resolution without expressing a lack of respect toward coordinate branches of government is not present. Furthermore we see no judicial decision which calls for unquestioning adherence and, finally, there does not appear to be any potentiality of embarrassment from multifarious pronouncements by various departments on the question.

Accordingly, in the words of Justice Brennan who wrote the opinion in *Baker v. Carr, supra,* "there should be no dismissal for non-justiciability on the ground of a

political question's presence." 369 U.S. at 217, 82 S.Ct. at 710.

If Congress had intended that some department or departments should have full and complete and exclusive authority in the area of obtaining redress for injuries, it certainly would have said so either in the legislative history or in the Act itself.

Our conclusion is, therefore, that the political question reason is not valid.

## V.

*Is the federal government liable under the Federal Tort Claims Act?*

■ Absent negligence on its part, the United States is not liable under the Federal Tort Claims Act for the torts of an independent contractor. 28 U.S.C. § 2671 (Supp.1982); *Logue v. United States,* 412 U.S. 521, 526–27, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). Nor does the FTCA authorize actions against the government based on strict *tort* liability. 28 U.S.C. § 1346(b) (1976). Accordingly liability cannot be imposed without a finding of the presence of negligence or some other recognized misfeasance or nonfeasance on the part of the government. *Laird v. Nelms,* 406 U.S. 797, 799, 92 S.Ct. 1899, 1900–01, 32 L.Ed.2d 499 (1972) (quoting *Dalehite v. United States,* 346 U.S. 15, 45, 73 S.Ct. 956, 972–73, 97 L.Ed. 1427 (1953)).

Apart from negligence there could be liability for an unlawful or wrongful act. 28 U.S.C. § 1346(b) (1976). This phrase has been narrowly interpreted. The term "wrongful act" clearly contemplates " 'trespasses' which might not be considered strictly negligent." *Dalehite, supra* at 45, 73 S.Ct. at 972, 973. *See also Hatahley v. United States,* 351 U.S. 173, 181, 76 S.Ct. 745, 751–52, 100 L.Ed. 1065 (1956); *United States v. Gaidys,* 194 F.2d 762, 765 (10th Cir.1952) (trespass is a redressible wrong under the FTCA).

■ Regardless of the nature of the substantive theory underlying the Federal Tort Claims Act liability, that theory must also exist in the law of the state where the incident occurred. 28 U.S.C. §§ 1346(b),

2674 (1976); *Gaidys, supra* at 764. *Aerojet, supra,* for instance, involved an FTCA claim based on a Florida law which imposed "a non-delegable duty on the employer to exercise reasonable care to prevent harm to third persons when the independent contractor is performing inherently or intrinsically dangerous work." *Id.,* at 1007. In *Aerojet* the activity was the launching of a NASA rocket. The court found such launchings . to be inherently dangerous. Based on that it held that the government "had a non-delegable duty to exercise reasonable care to prevent harm to third persons." *Id.,* at 1009. Inasmuch as the government failed to consider the safety of third parties, it was held liable under Florida tort law, as adopted by the FTCA. *Id.*

■ In view of the foregoing, it seems clear that the district court below should not have granted summary judgment. The court should have assessed whether employees of the United States were negligent. Part and parcel of this finding is whether Rockwell and Dow were independent contractors or were, in fact, employees of the United States within the meaning of the FTCA. *See* 28 U.S.C. § 2671 (Supp.1982).

Given the virtually complete control retained by the United States over the production of nuclear weapons, it may be that Rockwell is only an "alter ego" acting on behalf of the Government. The district court ought to consider this possibility in an actual trial. We would be remiss if we did not point out that the defendants here argue that, on one hand, Rocky Flats is entirely owned by the government and as independent contractors they also are immune due to preemption. On the other hand, Rockwell is willing to take the opposite position that it is not a true independent contractor.

Finally, it is the opinion of this court that after six years of pretrial activity and after the lengthy hearings that the matter should not be summarily dismissed. Plaintiffs are entitled to a trial. Neither the preemption doctrine nor the political question theory justify the dismissal of the case.

In conclusion we hold that this case was not one to be disposed of by summary judgment. There are viable remedies present and the facts that we have been able to read in the record argue in favor of presenting the evidence to a court.

The judgment of the district court should be and the same is hereby reversed.

An orderly presentation of evidence and a sifting of issues is essential. The cause is remanded to the district court with directions to conduct a trial or trials. Finally the trial court's dismissal of plaintiffs' exemplary damage claims and takings claims may be upheld under the *Silkwood* precedent [2] and the Tucker Act.

**2.** If in its review of *Silkwood* the Supreme Court reverses this court's determination that exemplary damages impermissibly interfere with federal regulation of nuclear materials, plaintiffs' claims for exemplary damages should be heard below.