## J. M. VAN BENTHAM v. THE BOARD OF COMMISSIONERS OF OSAGE COUNTY.

1. OPENING ROAD—*Cost of Maintaining Fences.* In an appeal from an award of damages allowed by the board of county commissioners, on account of the opening of a public road across the appellant's land, the cost of maintaining new fences rendered necessary by opening said road is a proper element of damages to be considered by the jury trying such appeal. It is error, therefore, for the court to exclude evidence offered in relation thereto.

2. VALUE OF TITLE—*Erroneous Instruction.* On the trial of such an appeal, it is error for the court to instruct the jury that they may consider the value of the title to the land over which the road is laid, and the value of the use of such land for other purposes than as a highway, in diminution of the appellant's damage, in the absence of any evidence relating to the value of said title, or such use of said land.

3. COSTS— *Offer to Confess Judgment.* In an action for the recovery of money, where the defendant desires to confess judgment for a sum less than the amount claimed, for the purpose of saving costs if the plaintiff on the trial fail to recover judgment for a sum larger than the amount offered, he must give the plaintiff notice of his intended offer, the time when he proposes to make it, and of the amount thereof, or he must call the attention of the court to the offer when the plaintiff is present in court.

*Error from Osage District Court.*

THE opinion contains a sufficient statement of the facts.

*Ellis Lewis,* for plaintiff in error:

At the time of the rendition of the judgment for $378.70, plaintiff asked leave and offered to prove that when said alleged offer was made the plaintiff was not present, and did not refuse or accept such confession, and that he had no notice that the offer would be made, no personal notice of its amount, or the time of making it, and also that the plaintiff had no knowledge that the offer had been made, except by being informed of it, some time afterwards, outside of court, which offer to prove was by the court refused, and the ruling of the court excepted to, and the court then, of its own mo-

motion, but on what evidence we know not, made a finding that, "it appearing to the court from the record" that such an offer was made, and then proceeded to tax all the costs in said case to plaintiff.

We think that the court erred in setting aside, of its own motion, the verdict of the jury that the road was "not of public utility," and in wholly disregarding and ignoring the written agreement made by the parties to the action. We know of no reason why, in an action of this kind, the parties have not the same control over it as the parties have in other civil actions, and after the issue had been tried by the first jury, under the direction of the court, we do not think the court was correct in holding that it had no jurisdiction to try the issue submitted to the jury, and in setting aside and wholly ignoring the verdict of the jury and the agreement of the parties. For this reason alone the court should have allowed plaintiff's motion for a new trial in this cause, and set aside the last verdict. We submit that the error was a most important and material one. It is true that the supreme court has decided that, when an appeal of this kind is taken, the appellate court can only try the question of the amount of damages, but those were cases where there was no agreement or stipulation between the parties; and why the parties in an action of this kind cannot control by agreement the issues to be tried, as in other cases, in a court of general jurisdiction, we are at a loss to understand.

The district court refused to allow the witness Wigginton to answer the question: "Do you know what it would be worth to build a lawful, legal fence, that is necessary to be built along there?" the only objection to it being that it was incompetent and irrelevant. And the court refused to allow the same witness to answer the question: "Would it require a strong or would a weak fence be sufficient; that is, taking into consideration the manner this farm has been cultivated, and stock being on it, would it require a strong fence or weak one to protect it?" the only objection being for incompetency and irrelevancy; and confined plaintiff, as to this and in fact

all the witnesses, to simply showing what would be the cost of a legal wire fence, and refused to allow plaintiff to show what the cost of keeping the fence in repair would be, the the only objection being that it was incompetent and irrelevant; the court refused to allow same witness to make any statement as to the difference it would make in the keeping of cattle when allowed to go to water at will, and when they had to be driven to water from a pasture in which there was none.

The witness Humphrey was not allowed to state what kind of fence would be necessary to be built to enable plaintiff to carry on the business of the farm as it was conducted before the road was located; and every other witness who was asked the same or a similar question was not allowed to answer. The only objection to such evidence was incompetency and irrelevancy. The evidence showed that plaintiff's farm contained between 1,800 and 1,900 acres; that it was a stock farm; that plaintiff at times had upwards of 800 head of cattle on the place, and that he raised blooded bulls for market; that a portion of his farm was used for crops, and a portion for pasturage, there being between 400 and 500 acres of tame grass land; yet all evidence of the kind of fence necessary to be built or the cost of the repair of any kind of fence was excluded, and plaintiff confined to proving what kind of fence had enclosed the 320 acres which had been cut off from water and from the main body of the farm by the road, without reference to plaintiff's right to properly equip his farm and complete his improvements from time to time, to carry on his farm in accordance with his original design, which he had been prosecuting for over 10 years as he was able. Nor was plaintiff allowed to show purposes and reasons for building particular fences at certain times; and by the evidence excluded, and by the ruling of the court as to what was permissible, the jury was entirely misled in making its allowance of damages. Witness Smith was not allowed to state anything as to cost of keeping fence in repair. Witness McMullin was not allowed to state what the cost of keeping fences along the

line of the proposed road would be.    There was no objection
to any of this evidence except incompetency and irrelevancy;
and a motion to strike out all of McMullin's testimony was
certainly improperly sustained.    This witness' testimony was
all practically stricken out; so the jury understood it, and
could have understood nothing else; but why, it is impossible
to understand.    The witness had stated that the land was di-
minished in value from $2.50 to $5 per acre, and yet on the
ground of incompetency and irrelevancy this was stricken out.
How a more rational method of conveying to the jury the na-
ture and amount of the injury to plaintiff could have been
adopted, it is hard to understand.

The second instruction is erroneous.    This court, in case of
*Comm'rs of Dickinson Co. v. Hogan,* 39 Kas. 609, says:

"The damages to a land-owner through whose farm a pub-
lic road is laid are made up of innumerable elements, differ-
ing in each particular case.    The object and purpose for which
a farm is used; what it is adapted to; the manner in which
it is used; its location and convenience, are all matters to be
taken into consideration in assessing the damages.    Where
land is owned and used for stock purposes, water being upon
one part, and grazing land upon another, the means of reach-
ing different portions of the land for the purpose for which it
is used and adapted, and the like, must always be considered.
So, in this case: the fact of the land being separated by a
public road, the disadvantage of maintaining and keeping up
fences, the opening of gates, and crossing from one part of
the land to another; . . . are all proper elements to be
considered by the jury."

The court was asked to give an instruction embodying the
principles of this decision, which it refused, and the court not
only refused to instruct the jury that "the disadvantage of
maintaining and keeping up fences" was an element of dam-
ages to be considered by the jury, but refused to allow the
plaintiff to prove anything on the subject.    Under the case
above cited, the court erred materially in its second instruc-
tion.

In the third instruction the court says: "The plaintiff has,

and will have at all times, the right to use any portion of the land covered by the road in any manner which will not interfere nor be inconsistent with the paramount right of the public to use it for the purpose of a public road, and you may properly take this into consideration in determining the amount of damages sustained by the plaintiff." This was saying that plaintiff could make other uses of the road, valuable ones, which other citizens could not. What are they? The court also tells the jury that it may properly consider the value of the title to the land covered by the road perpetually appropriated to public use. This was saying, as to these valuable uses, and at the time of giving this instruction, the jury had evidence on which it could arrive at their amount and value, for the purpose of deducting that amount from amount of damages proved by plaintiff. Yet the defendant had not offered to give a particle of evidence as to amount and value of such diminution, and practically could have proved none — at most, nothing but a nominal value. Where no evidence tending to prove a material point has been given, the court should rather say so, and withdraw it, instead of adding to the confusion of the jury by telling that it may properly take such point into consideration. It was error to give the above instruction.

*P. E. Gregory,* and *Bradford & Huron,* for defendant in error:

On July 5, 1887, the defendant in error offered to confess judgment for the sum of $500, which offer was rejected by the plaintiff in error, or at least it was not accepted as shown by the record, which is tantamount to refusing it. The offer was made in open court in writing, and hence the plaintiff in error is charged with notice, and cannot be heard to say he had no knowledge of the offer. The court committed no error in taxing all the costs accruing subsequent to July 5, 1887, to the plaintiff in error. We think the filing of the written offer to confess judgment for $500, and entering into the written agreement to submit the one question to the jury, "Is the road of public utility?" on the same day, and filing them at the same

time, is evidence of the fact that a compromise had been contemplated by both parties.

Did the court err in setting aside the verdict of the jury, rendered on July 5, 1887, on the one question, "Is the road of public utility?" The court very properly said it had no jurisdiction to try that question, and set the verdict aside. In *Briggs v. Comm'rs of Labette Co.*, 39 Kas. 90, this court passed upon this identical question, in the following language:

"On an appeal from an award of damages for the laying out of a public road, the only question the court has jurisdiction to determine, or submit to the determination of a jury, is the amount of damages the appellant is entitled to."

Paragraph 5480, General Statutes, requires the viewers to make a report to the county commissioners in writing, stating the amount of damages, if any, by them assessed, and to whom; and they are also required to return to the board the written applications on which the assessments are allowed. The statute then says:

"All allowance for damages, as provided in this act, shall be subject to revision by the said board of county commissioners, and any person feeling himself aggrieved by the award of damages made by the board of county commissioners may appeal from the decision of the said board of county commissioners," etc.

The appeal lies from the judgment of the board of county commissioners on the subject of damages and nothing else.

The plaintiff in error seeks not only to reverse the judgment at the June term, 1888, but the former judgment, of July 5, 1887, by which the court on its own motion set aside the verdict of the jury declaring the road "not of public utility," and seeks to have the trial court directed to render a judgment in favor of the plaintiff in error on that verdict, which the trial court very properly said it had no right to permit a jury to render. All errors, if any, committed by the trial court in submitting that one question to the jury were cured by the granting of a new trial to the plaintiff in error,

and a trial of the whole cause had at the November term, 1887, of that court. The whole matter again came before the court and jury, and the plaintiff in error was afforded an opportunity to present his whole case, and he cannot now be heard to complain of errors committed in either of the former trials. Having been awarded a new trial on his motion, and the new trial had, he can only complain of the errors committed at the last trial.

The plaintiff in error complains of the ruling of the court on the following question: "Do you know the cost of building a fence along that line, along the line of that road; what it would amount to; what would it be worth to build a lawful, legal fence, that is necessary to be built along there?" The question was objected to as incompetent, irrelevant, and immaterial, and the court sustained the objection. Counsel for plaintiff in error complains of this ruling, but in the following questions proceeds to cure the cause for the objection by showing that the witness is a competent one to testify on that subject. At the time the objectionable question was asked, he had not shown himself competent to testify on the subject of fence building. Whether it would require a strong or weak fence to protect the farm of the plaintiff in error is also immaterial, and the court committed no error in refusing to allow the witness to answer the question put to him. The question is indefinite, uncertain, and incompetent, and does not tend to prove any damage that the plaintiff in error sustained by reason of locating the road.

Plaintiff in error complains because the court would not permit him to show by the witnesses Wigginton, Humphrey, Smith and McMullin what repairs to a certain kind of fence would cost. The kind of fence to which their attention was called was not the kind of fence required to be built on the line of the proposed road. The plaintiff in error cannot be permitted to claim and recover for repairs on a hog-tight fence when a lawful wire fence is the one in use.

A motion was made to strike out a portion, not all, of Mc-

Mullin's testimony.   We fail to see how the jury could be misled by this motion, as it specifies what portions of the witness' testimony is to be stricken out.

Counsel for plaintiff in error insists that the trial court erred grossly in not permitting him to prove the cost of maintaining and repairing a peculiar kind of a fence along the proposed highway, and cites the case of *Comm'rs of Dickinson Co. v. Hogan*, 39 Kas. 606, and quotes from page 609, of that case.

The case at bar is not a case like the one relied on.   An attempt was made to show that the laying out of the road would separate the water from the grazing land, but the attempt was fruitless.   No opening of gates is made necessary or extrastrong fence is required to enable the plaintiff in error to enjoy the full possession of his premises for the purposes for which they were intended.   What may be an element of damage and proper to go to a jury in one case would be very improper in another.   Each case is governed largely by the facts and circumstances surrounding it, and the trial court is put to the test of pruning sometimes severely, in the estimation of one side or the other.   We think the trial court gave the law properly in the second instruction, and very properly declined to give the instruction asked for by the plaintiff in error.

Opinion by STRANG, C.: This was an appeal from the board of county commissioners of Osage county in allowing damages to the plaintiff in error on account of a public road laid out through his premises.   The appeal came on for a hearing at the June, 1887, term of the district court of said county.   Before the case was called, the parties entered into the following agreement:

"It is hereby agreed between the parties hereto, that the questions to be determined by the jury shall be, is the road, as ordered and located by the board of county commissioners over and along the plaintiff's land, of public utility?   If found by the jury in the affirmative, then the question of the plaintiff's damages by reason of the location of said road

shall be submitted to them upon evidence to be introduced before them. But if the jury shall determine said question in the negative, then the judgment of said court, shall be, that the order of said board of county commissioners ordering and locating said road, and ordering said road survey and plat to be recorded, and ordering the trustee to open said road for public travel, shall be set aside, and that the defendant pay the costs of this suit."

The case was heard under this agreement, and the jury found in the negative, that the road was not of public utility. Afterward, on its own motion, the court set aside said finding. of the jury, on the ground that the court had no jurisdiction over the question. At the following November term of said court, the case was heard upon the question of damages and a verdict was returned for the plaintiff in the sum of $375, the exact amount allowed by the commissioners. Plaintiff filed a motion for a new trial, which was heard at the April, 1888, term, and allowed. The case was again tried at the following June term, resulting in a verdict for $378.70 in favor of the plaintiff. A motion for a new trial was again filed by the plaintiff, which was overruled, and judgment rendered in favor of the plaintiff for $378.70, and that the defendant recover costs. The judgment as to costs was based upon the fact that there was on file among the papers of the case an offer of the defendant confessing judgment in favor of the plaintiff for the sum of $500, a sum greater than the amount found by the jury in his favor. The plaintiff objected to the judgment as to costs, and offered to prove that he was not in court when said offer was made and knew nothing of it till afterward, and then only what he had heard out of court, and did not know it had been filed in the case; that he had had no opportunity to accept or reject the offer. The court overruled his objection, and refused to allow the plaintiff to make the proof offered.

The first question argued by the plaintiff in error in his brief is, that the court erred in setting aside the finding of the jury that the road was "not of public utility." It is conceded that the court had no jurisdiction over that question, unless such

jurisdiction was obtained by force of the agreement of the parties to submit the question to the court. And this court has decided that, on an appeal, in a case like this, in the absence of an agreement attempting to confer jurisdiction, the only question the court has jurisdiction to determine or to submit to the jury is, the amount of damages the appellant is entitled to. (*Briggs v. Comm'rs of Labette Co.*, 39 Kas. 90.) The statute of our state has conferred upon road viewers and the board of county commissioners power to determine whether or not a proposed public road is of public utility; and we do not think parties by an agreement can take this power from the tribunals with which it is lodged by the statute and confer it on the district court. A public road usually affects the lands of more than one person, and the rights of travel of many persons. It would hardly be the proper thing to permit a single land-owner, by an agreement with the board of county commissioners, to confer jurisdiction on the district court that every one knows the statute has lodged elsewhere. It would be unfair to the other persons interested in and whose rights are affected by the question whether or not the proposed road is to be established.

A further contention of the plaintiff in error is, that the court erred in refusing, all through the trial, to allow the plaintiff to show, as an element of damage, what it would cost to keep up or in repair the new fences necessitated by the opening of the road through his land. In the case of *Comm'rs of Dickinson Co. v. Hogan*, 39 Kas. 606, a case like this, the court said:

"In such a case, the proper elements of damages are whatever tends to make the land of less value after the location [of the road] than it was before, which may include additional fence, its repairs, separating the land, inconvenience of going from one tract of land to another separated by such road, and the like."

The court also says in this case:

"The fact of the land being separated by a public road, the disadvantage of maintaining and keeping up fences, the open-

ing of gates and crossing from one part of the land to another for the purpose to which the land was used and adapted, are all proper elements to be considered by the jury."

In the light of this case, and upon the general principle that whatever tends to make the land of less value constitutes an element of damages, we think the court erred in excluding evidence as to what it would cost to keep necessary new fences in repair.

The court instructed the jury that it might take into consideration the value of the title to the land over which the road was laid, and also the use of such land, for the purposes for which he might use it other than as a public road, in diminution of the damages suffered by the plaintiff. This instruction was given without any evidence in the case upon which it could be based, and was for that reason, we think, error. There was no evidence in the case, and none offered, to prove the value of such title, nor the value of such use of the land over which the road was laid. The plaintiff objected to that part of the judgment relating to the costs, on the ground that he had no knowledge of any offer of judgment having been made, and offered to prove to the court that he was not in court when the offer was filed in the case, and had had no notice of it. The court refused to listen to proof on the subject, and entered judgment against the plaintiff for the costs. We think this was error. The mere fact of such an offer having been filed with the papers in the case is not sufficient to authorize the court to render judgment against the plaintiff for costs, especially when the plaintiff protests that he knew nothing of such an offer in the case, and offers to make proof of that fact to the court. A paper containing such an offer is not like a pleading, the filing of which imparts notice. But our statute points a way in which an offer confessing judgment may be made so as to save costs to the party making it, if the judgment obtained on the trial is not for a greater sum than the amount offered. Under ¶ 4622, General Statutes of 1889, if the defendant or his attorney serve a written offer to compromise on the defendant, and he refuses to accept, he must

pay all costs accruing subsequent to the offer, unless on the trial he recover a judgment for a sum larger than the amount so offered. Paragraph 4627, same statutes, provides that after an action for the recovery of money is brought, the defendant may offer in court to confess judgment for a part of the amount claimed, and if the plaintiff is present in court when the offer is made, or has had notice that the offer will be made, and of the time when it will be made and the amount thereof, and fails on the trial to recover a judgment for an amount greater than the sum confessed, he shall pay all the costs of the defendant incurred after the offer.

It will be seen that each of these paragraphs requires notice of some kind to the plaintiff of the offer, to render him liable for the costs of the defendant accruing subsequent to the offer, if he fails to recover a judgment for a sum larger than the amount of the offer. Under the first paragraph cited, a written offer must be served upon the plaintiff to render him liable for such costs. Under the latter paragraph, he must either be present in court when the offer is made or he must have notice thereof, to render him liable for costs. If he is present in court, and the attention of the court is called to the offer at the time it is made, that will be sufficient. But it will not be sufficient, even if the plaintiff is present in court, to file a written offer with the clerk of the court, without calling the attention of the court or plaintiff or his attorney in the suit thereto. If this was the only error in this case, this court could modify the judgment, by directing the court below to hear the plaintiff on the question of his knowledge of the offer to confess judgment in the case, and retax the costs if the court should find in his favor. But as the case must be reversed on other grounds and go back for new trial, such trial can be had in accordance with the views herein expressed.

It is recommended that the judgment of the district court be reversed, and the case remanded for a new trial.

By the Court: It is so ordered.

All the Justices concurring.