**HOLMES HEREFORDS, INC., Plaintiff,**

v.

**The UNITED STATES of America and the Secretary of the United States Air Force, in his official capacity, Defendants.**

**No. C89–0104J.**

United States District Court, D. Wyoming.

May 7, 1990.

Charles E. Graves, Cheyenne, Wyo., for plaintiff.

Richard Stacy, U.S. Atty., Cheyenne, Wyo., for defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, District Judge.

This matter came before the court on the defendants' 29 September 1989 renewed Motion for Summary Judgment and hearing was held before the court on October 24.

## FACTS

There have been few significant changes in this litigation since the Court's 28 July

1989 Findings of Fact and Conclusions of Law, although the contentions of the plaintiff have transformed somewhat since the initial complaint. The Court incorporates herein those Findings. The defendants have aptly noted that the precise nature of the plaintiff's contentions is difficult to identify.

Each of the following claims is brought pursuant to the Federal Tort Claims Act. The plaintiff first characterizes an array of claims under the rubric "interference with prospective economic advantage and misrepresentation."

1. Defendant breached its duty to provide fences and a source of water to prevent injury to Plaintiff's cattle operation.

2. Defendant wrongfully enlarged the use of its easements acquired in connection with the Minuteman Missile program.

3. Defendant negligently delayed installation of road signs warning that Plaintiff's property was open range.

4. Defendant and its agents breached its [sic] duty to obtain a construction permit from Plaintiff.

5. Defendant's agents trespassed on Plaintiff's private property.

The plaintiff contends secondly that the defendants have committed the tort of "bad faith" in violation of a duty of good faith and fair dealing. Third, the plaintiff claims that the defendants have negligently expanded the use of easements which were acquired in connection with the initial installation of the P–11 site. Finally, plaintiff states that it has been denied its fifth amendment guarantee of equal protection of the laws.

The Court finds that the FTCA claims may be narrowed to three distinct causes of action: that defendants were negligent in that they breached a duty to provide fencing and a water source; that defendants wrongfully enlarged the use of right of way, drainage, and security easements; and that the defendants and their agents trespassed on plaintiff's property.

Each of the plaintiff's FTCA claims are found in the third claim of its 5 September 1989 Amended Complaint. The plaintiff contends in the second claim of this complaint that nine (9) acres of land have been taken from it by the government due to excessive runoff and trespass. The complaint alleges that the value of the acreage is $9,000.00. The fourth claim in the amended complaint again alleges the equal protection contention.[1]

The government now moves this Court for summary judgment on all issues. Defendants claim initially that the plaintiff has failed to articulate a claim under the Federal Tort Claims Act, in that interference with a prospective economic advantage, misrepresentation and duty of good faith and fair dealing are barred by 28 U.S.C. § 2680(h) and that as a matter of law the government's easement is unlimited in scope of use and no duty exists to protect the plaintiff's business from the effects of the increased use of the easement. The government next argues that the fifth amendment equal protection claim cannot be sustained because the plaintiff is not a member of a suspect class, and the treatment given it was the same as any other party similarly situated. Finally, the

---

**1.** The plaintiff's first claim seeks preliminary and permanent injunctive relief. The plaintiff asks the Court to enjoin any trespass by the air force, and to require them to provide fencing and an additional water supply to protect the plaintiff's cattle operation. The plaintiff also asks for an order to cease air force transportation of equipment and personnel in violation of its regulations. Finally, the plaintiff requests an order compelling the defendants to enter a declaration of taking of an additional security easement surrounding the P–11 site.

These requests differ from the plaintiff's initial complaint, which asked merely to enjoin trespass by air force personnel. After a hearing on the plaintiff's motion for preliminary injunction, this Court denied that relief. If it were before the Court, the remaining requested relief, excepting the declaration of taking, would also be denied. One prerequisite for injunction relief is that a showing of "substantial likelihood that the movant will eventually prevail on the merits...." *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). In light of this Order, there is no longer such a possibility.

The request for a declaration of taking is not before the Court on this motion for summary judgment.

government contends that insofar as the plaintiff's claims are based on promises made by the government and subsequently broken, the claims address an implied contract theory and are thus covered by the Tucker Act, 28 U.S.C. § 1491(a)(1). Since the jurisdictional limit for Tucker Act claims in a district court is $10,000, and the damages alleged in this action far exceed that amount, the defendants contend that the case is within the exclusive jurisdiction of the United States Claims Court.

## DISCUSSION

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party's burden may be met by identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether these burdens have been met, the court is required to examine all evidence in the light most favorable to the non-moving party. *Barber v. General Electric Co.*, 648 F.2d 1272 (10th Cir.1981).

Once the moving party has met its initial burden, the burden shifts to the party resisting the motion. That party must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Manders v. Oklahoma ex rel. Dept. of Mental Health*, 875 F.2d 263, 265 (10th Cir.1989) citing *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554.

## CLAIMS PURSUANT TO FEDERAL TORT CLAIMS ACT

 Initially, and as should be apparent from the Court's characterization of the claims, the Court finds that the plaintiff has not stated a compensable claim for interference with prospective economic advantage. That tort generally requires an intentional act by the tortfeasor and none has been alleged.

Cases have been infrequent in which even the claim has been advanced that the defendant through his negligence has prevented the plaintiff from obtaining a prospective pecuniary advantage; and the usual statement is that there can be no cause of action in such a case. There are, however, a few situations in which recovery has been permitted, all of them apparently to be justified upon the basis of some special relation between the parties.... In all probability, as in the case of interference with existing contracts, liabilities for negligence is not impossible, but it must depend upon the existence of some special reason for finding a duty of care.

W. Keeton, PROSSER & KEETON ON TORTS § 130, at 1008 (5th ed. 1984).

The court finds that no evidence presented shows either a contractual or other special relationship which would impose upon the defendants a particular duty of care in the use of the easements. Cases in which such a duty arises are always in the context of interference with making a prospective contract, or receiving the benefits from a prospective contract.

It is noteworthy, then, that the majority of federal courts entertaining such complaints have dismissed them summarily as claims arising out of interference with contract rights. *See, e.g., Chen v. United States*, 854 F.2d 622, 628 n. 2 (2d Cir.1988) ("[A]ctions for tortious interference with business (i.e., prospective) advantage 'are barred as claims arising out of interference with contract rights ...' "); *Art Metal–U. S.A., Inc. v. United States*, 753 F.2d 1151, 1155 n. 5 (D.C.Cir.1985) (listing seven federal decisions which have held likewise). In *Art Metal*, the D.C. Circuit reasoned that an interference with a plaintiff's mere expectation to enter into a contract is within the purview of the § 2680(h) exception.

This would certainly include interfering with one's ability to enter into a contract for sale, or interfering with the prospective value of future sales contracts.

The basis for Holmes' claim for damages due to interference with prospective economic advantage is found in ¶¶ 13–16 of the amended complaint. Holmes contends that the activities of the defendants substantially reduced the weights of calves produced in the affected pasture. As a result, several of the bull calves had to be castrated and sold on the regular market rather than being sold as breeding bulls. The calves which were sold were smaller and brought lower prices. Further, the Expected Progeny Difference was reduced and plaintiff contends that this would cause a loss of profits for at least the next ten years. These damages all arise from an interference with Holmes' ability to enter into contracts for sale, or the value of contracts entered into. As such, they are barred by statute.

■■■ Nor may the plaintiff state a claim based on representations made to it by agents of the Air Force. 28 U.S.C. § 2680(h) provides that the United States preserves its sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights." (emphasis added). The use of the term "misrepresentation" is not qualified in any way, and includes both intentional and negligent misrepresentations. *United States v. Neustadt*, 366 U.S. 696, 705, 81 S.Ct. 1294, 1299, 6 L.Ed.2d 614 (1961). To ascertain whether the complaint "arises out of" misrepresentation, the court must look past the literal language of the complaint and discern which claims, if any, have as their basis a misrepresentation by the government. *Hall v. United States*, 274 F.2d 69, 71 (10th Cir.1959). The plaintiff is correct in pointing out that the court must look to the gravamen of the complaint, *Preston v. United States*, 596 F.2d 232 (7th Cir.1979), and merely because misrepresentation is collaterally involved, the government may still be liable for negligent conduct.

The court's analysis in *Hall*, 274 F.2d 69, is instructive. In that case, a government representative had wrongly found that the plaintiff's cattle were diseased. Based on this, the plaintiff sold the cattle for less money than he would otherwise have demanded. Finding the mistake, Hall attempted to recover the difference from the government. In denying his right to relief, the Tenth Circuit analyzed the plaintiff's complaint to discover the actual cause of action.

We must look beyond the literal meaning of the language to ascertain the real cause of complaint. Plaintiff's real claim is that because of the negligent manner in which these tests were made, the result showed that plaintiff's cattle were diseased; whereas, in fact, they were free from disease and that the Government misrepresented the true condition of these cattle. Plaintiff's loss came about when the government misrepresented the condition of the cattle, telling him they were diseased when, in fact, they were free from disease. The claim is that this misrepresentation caused plaintiff to sell his cattle at a loss. This stated a cause of action predicated on a misrepresentation. Misrepresentation as used in the exclusionary provision of the Statute was meant to include negligent misrepresentation.

*Hall*, 274 F.2d at 71.

Plaintiff contends that its loss was due in part to the failure of the government to fence the access road and drill a well for water in the north pasture. Plaintiff did not remedy the situation itself ostensibly because it was relying on representations made by Air Force agents that the Air Force would itself take care of Holmes' anticipated livestock problems.[2] The mis-

2. This is undoubtedly where the plaintiff's damages arise. The plaintiff vehemently denies in brief that any claim of promissory estoppel or implied contract has been forwarded. Thus, the

damages from the absence of fencing and wells can arise only from a breach of a non-contractual duty of the Air Force to construct the fence, or from the failure of the plaintiff to mitigate

representation exception protects the United States from liability in situations where a party relies on the advice of a government official or agent to his detriment. *Allen v. United States,* 527 F.Supp. 476 (D.Utah 1981). To the extent that occurred here, plaintiff's claim is predicated on a misrepresentation and is barred by the unambiguous language of § 2680(h).

■ The government contends that the § 2680(h) exemption applies equally to plaintiff's "good faith and fair dealing" claim. The Court agrees. Although plaintiff asserts that this is an independent and distinct tort, it is only actionable insofar as government spokesmen represented to them that the installation of fences or condemnation procedures for an enlarged security easement would occur. Even the plaintiff characterizes the complaint as the "United States violat[ing] its duty of good faith and fair dealing in that *Air Force officials represented* that the government would condemn additional acreage for security purposes ..." Plaintiff's Memorandum of Law in Resistance, at 9 (emphasis added). The relative bargaining positions of the parties or "special relationship," if any, are irrelevant in a case, such as here, where the complaint is grounded wholly in an alleged misrepresentation.[3] Because each of these claims ask the court for damages based on misrepresentations made by government agents which were relied upon by the plaintiff, they should be dismissed.

■ Additionally, the Court finds that the plaintiff is barred from asserting against the United States a claim based in the tortious denial of its fifth amendment guarantee of equal protection of the laws. It is a basic tenet of constitutional law that the United States "is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). The plaintiff has made no showing that such consent has been given.

It does contend that suit against the government for violation of constitutional rights is supported by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). That case, however, suggests that recovery may be had against federal agents, not the government.

> "*Bivens* established that a citizen suffering a compensable injury to a constitutionally protected interest could ... obtain an award of monetary damages against the responsible federal official" precisely because "[t]he barrier of sovereign immunity is frequently impenetrable."

*Clemente v. United States,* 766 F.2d 1358, 1363 n. 5 (9th Cir.1985), citing *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978). *Bivens* should not be read to allow recovery

---

the damages by constructing the fence itself. The existence of a non-contractual duty is discussed at length below.

There is no claim that the defendants are in any way contractually bound by the representations made by their agents. As the defendants correctly note, such a claim would be under the exclusive jurisdiction of the United States Court of Claims.

**3.** It is interesting to note that the cases cited by the plaintiffs recognizing an independent cause of action for a breach of an implied duty of "good faith" are from state courts recognizing that duty where there is an implied contractual relationship between the party and the government. Although plaintiffs discuss a relationship where the government is in a superior bargaining position, no allegation of any contractual relationship has been forwarded here. As well, at least one district court has rejected the argument that a claim of breach of the implied duty of "good faith" is actionable under the FTCA.

*Darko v. U.S. Dept. of Agriculture,* 646 F.Supp. 223 (D.Mont.1986).

Since the argument of this motion, the Wyoming Supreme Court has also adopted an independent tort based on a breach of the implied duty of good faith in insurance contracts. *McCullough v. Golden Rule Ins. Co.,* 789 P.2d 855 (Wyo.1990) (LEXIS, States library, Wyo file). The Wyoming court did not extend such a duty to situations where there was no contractual relationship, but found that "[t]here are certain classes of contracts which create a relation out of which certain duties arise as implied by law independently of the express term of the contract." *Id.* at 8–9, quoting *Tate v. Mountain States Tel. & Tel. Co.,* 647 P.2d 58 (Wyo.1982). This Court finds no suggestion in the opinion that such a duty would exist in a situation where there is admittedly no contractual relationship.

against the government for the constitutional torts of its agents or officers. *Clemente,* 766 F.2d at 1363.

The Court has found unanimous agreement that, despite the desirability of a direct remedy against the government, constitutional torts are outside the scope of the FTCA and the government is immune from suit in these cases. *Ascot Dinner Theatre v. Small Business Admin.,* 887 F.2d 1024, 1031 (10th Cir.1989). *See also, Sanchez v. Rowe,* 870 F.2d 291 (5th Cir. 1989); *McCollum v. Bolger,* 794 F.2d 602 (11th Cir.1986); *Martinez v. Winner,* 771 F.2d 424 (10th Cir.1985); *Clemente,* 766 F.2d 1358; *Laswell v. Brown,* 683 F.2d 261 (8th Cir.1982); *Birnbaum v. United States,* 588 F.2d 319 (2d Cir.1978).

## DUTY TO FENCE

Those of the plaintiff's contentions which are based on the breach of the government's duty to perform certain acts are actionable under the FTCA, assuming that such a duty exists and that its breach is actionable against an individual in state court, regardless of a collateral misrepresentation. In the plaintiff's complaint and two replies to the defendant's motions for summary judgment, it identifies as the sources of the defendant's duty to fence the road and drill a well providing water for the segregated pasture the equal protection of law guarantee of the fifth amendment, Wyoming public policy, and Air Force policy. None of these claims withstand scrutiny.

■ The Air Force presented evidence that the funds available to them for fencing missile site access roads were only for public and not private roads. The testimony provided to the court explained that funds which were available were made so through the Federal Highway Administration and only to roads designated as county roads. No funds were available for fencing absent such a designation. Tr., Vol. II at 54–5. Further, no evidence was offered showing that fencing was done by the Air Force on any but public roads approved for federal funding. An affidavit of Norman Holmes filed with the court November 1, 1989 states that the government has, at its own expense, installed at least two cattleguards in locations not abutting public roads, and that the government provides funds for maintenance for several Department of Defense roads. Admitting these allegations as true, they do not establish unequal treatment by the government of persons similarly situated. It would be quite logical for the government to maintain the roads it uses to service its missile sites, and evidence indicates this has occurred even on the road at issue here. The installation of cattleguards at points where government access roads, public or private, allow for the integration of pastures by crossing fences also seems reasonable, and Norman Holmes testified that at the three places where the access road in question crosses fence lines, there are autogates. Tr., Vol. I at 32. It does not follow from the plaintiff's contentions that a policy of fencing all access roads has been adopted by the Air Force, nor that the plaintiff has received unequal treatment. Indeed, the evidence presented to the court indicates the contrary.

■ Even if the plaintiff had established an Air Force policy which had been violated, the violation of either a federal statute or an administration policy or regulation, by itself, does not create a duty giving rise to a cause of action under the FTCA. *Snowbird Construction Co., Inc. v. United States,* 666 F.Supp. 1437 (D.Ida. 1987); *Wells v. United States,* 655 F.Supp. 715 (D.D.C.1987).

■ Finally, the defendants note a presumption in Wyoming of public policy against fencing unless that duty is established by the legislature, such as in the case of the railroads. There is no support in Wyoming case law or legislation supporting a finding that there exists a duty to fence in a situation similar to the present one.

Plaintiff cites substantial case law in support of its proposition that the fencing of fields segregated by rights of way should be the duty of the easement owner. The law cited does not support such a

conclusion. *State v. Hoblitt*, 87 Mont. 403, 288 P. 181 (1930), *Tillamook Cty. v. Johnson*, 190 P. 159 (Ore.1920), *Van Bentham v. Board of Comm'nrs of Osage Cty*, 49 Kan. 30, 30 P. 111 (1892), and *Butte Cty. v. Boydson*, 64 Cal. 110, 29 P. 511 (1883) are quite consistent in their holding that, in a condemnation action for a public right of way, the cost of fencing is a proper element of the damages to be considered in figuring the value of the land condemned. Consequently, the cost of such would be indirectly shouldered by the condemnor. None of these cases remotely suggest, however, a duty on behalf of the condemnor to fence rights-of-way which have been condemned.[4] While it is possible that an additional taking of plaintiff's land could require additional compensation, one element of which may be the cost of fencing, it would stretch the logic of these cases to suggest that an affirmative duty to fence could arise whenever the use of the easement was materially increased, with or without a corresponding taking of any additional lands.

In the present case, the condemnation proceeding was tried before a jury in 1965 and compensation paid to the plaintiff's predecessor in interest. This court does not now have jurisdiction to add the cost of fencing to the damages already awarded for the condemnation of that right-of-way.

Plaintiff also refers the court to *Chicago & North Western Ry. Co. v. Bishop*, 390 P.2d 731 (Wyo.1964), contending that the Wyoming court's decision evidences a policy of the State of Wyoming to fence rights of way to protect livestock. The "policy" of which the court speaks is a self-imposed highway department policy of fencing public rights-of-way which it constructs. The term does not refer to a judicially recognized duty which this court is free to impose. In fact, a careful reading of *Bishop* suggests just the opposite.

*Bishop* involved a constitutional challenge to the statutory requirement that railroads fence their rights-of-way. The railroad challenged that provision, arguing that absent a like requirement for users of public highways, the statute was in violation of several Wyoming Constitutional provisions as well as the equal protection clause of the fourteenth amendment. In upholding the constitutionality of the provision, the court suggested that legislation would be required to impose such a requirement on other rights-of-way.

> The change which has taken place serves more to emphasize *the need for new legislation to protect the livestock grower* against the new hazard created by highway transportation rather than the need for nullifying old law which continue to be necessary in order to protect livestock against the same and identical perils as they were necessary to be protected against when the criticized laws were first adopted.

> \* \* \* \* \* \*

> It is not for us to hold unconstitutional legislative enactments merely because they now fail to give complete protection against a danger. *It is for the legislature to find the way to protect against the new hazards,* presented by the changed conditions.

*Bishop*, 390 P.2d at 733, 736 (emphasis added). Past decisions of the Wyoming court further support that conclusion. "[Wyoming] adheres to the common law rule that a landowner owes no duty to fence out or against the livestock of another, in the absence of a contract or statute imposing such a duty or unless the duty has arisen by prescription." *Sanford v. Arjay Oil Co.*, 686 P.2d 566 (Wyo.1984), citing *Garretson v. Avery*, 26 Wyo. 53, 176 P. 433 (1918).

The evidence indicates that plaintiff received no different treatment than any other similarly situated party, and that neither the policy of the Air Force nor public policy of the state of Wyoming militates toward establishing a duty to fence in this type of

---

**4.** The plaintiff cites *Farmers' Reservoir & Irrigation Co. v. Cooper*, 54 Colo. 402, 130 P. 1004 (1913) to establish a duty to provide a well. That case arose in the same context as those cited above, with the Colorado Supreme Court holding that the interference with access to water was an appropriate element of damages in a condemnation proceeding.

situation. The existence of a duty being an essential element of the claim that the Air Force was negligent in failing to construct a fence, and the plaintiff having not made a sufficient showing to establish that duty's existence, the motion for summary judgment should be sustained on this portion of the claim. Also, insofar as the duty to fence would be imposed upon the Air Force due to representations made by the government through its employees, the damages resulting from those misrepresentations and the plaintiff's detrimental reliance upon them, the claim is dismissed.

## ENLARGEMENT OF EASEMENT

■ The government contends summary judgment should issue on plaintiff's claim of negligent expansion of easement because the increase in use of the easement was intentional and that, as a matter of law, the easement is unlimited in scope of use. There is no contention that this cause of action is outside the scope of the FTCA. Whether the easement was negligently or intentionally expanded is not relevant to the court's inquiry. The gravamen of the complaint is that the expansion is outside the scope of the easement, and as such is wrongful. The FTCA does not by its terms limit the jurisdiction of this court over tort actions against the government to only those involving negligence. The Supreme Court has recognized that "[t]he Act extends to novel and unprecedented forms of liability as well." *United States v. Muniz*, 374 U.S. 150, 152, 83 S.Ct. 1850, 1852, 10 L.Ed.2d 805 (1963).

■ The law governing easements is well settled in Wyoming, yet can be difficult to apply. The rights of the owner of an easement are paramount to the rights of the servient estate owner to the extent of the easement "and include all rights incident or necessary to its proper enjoyment. The owner of the servient estate retains only such incidents of ownership as are not inconsistent with the easement." *WYMO Fuels, Inc. v. Edwards*, 723 P.2d 1230, 1236 (Wyo.1986). The use of an easement can change in quantity and quality as new needs and uses of the property arise with-out constituting a deviation from the original grant. *Bard Ranch Co. v. Weber*, 557 P.2d 722, 731 (Wyo.1976).

Unless the language of the creating instrument or the attending circumstances at the time of the grant indicate a contrary intent, the scope of an easement is not limited to the uses contemplated to be made at the time of or immediately after its creation, either with respect to the permissible uses of the easement or with respect to the permissible uses which may be made of the servient land by the servient owner. In the absence of a contrary intent both the uses of the dominant and servient owners are subject to adjustment consistent with the normal development of their respective lands.

*Bard Ranch*, 557 P.2d at 731, quoting *Jones v. Edwards*, 219 Or. 429, 347 P.2d 846, 848 (1959).

■ The owner of the servient estate also possesses rights, however, which the easement owner must respect, *Wallis v. Luman*, 625 P.2d 759, 768 (Wyo.1981), and the easement owner may not "materially increase the burden of the servient estate or impose thereon a new and additional burden." *Bard Ranch Co.*, 557 P.2d at 731, citing 25 Am.Jur.2d, Easements & Licenses § 72 at 478. If those using the easement exceed their rights, the owner of the servient estate may recover damages. *Curutchet v. Bordarrampe*, 726 P.2d 500, 506 (Wyo.1986).

It is for the court to determine, then, whether an issue of material fact exists as to all rights incident or necessary to its proper enjoyment. The owner of the servient estate retains only such incidents of ownership as are not inconsistent with the easement. The court must keep in mind that the uses of the easement are subject to change consistent with the development of that estate.

The easements in question were condemned by the government in *United States v. 187.17 Acres of Land, et al.*, Civil Action No. 4798 (D.Wyo.1965). Despite the claims of counsel in both the preliminary injunction hearing and subsequent filings,

the easements do not expressly provide for unlimited use by the Air Force, although the term of each is perpetual, unless they are abandoned. The easements at issue in this case are Tract Nos. FP–1100E–2, a 1200 foot doughnut-shaped safety easement surrounding the fee simple tract within which actual missile is housed, FP–1100E–10,[5] a permanent access road easement, and FP–1100E–11, a permanent drainage easement contiguous to the northeast corner of the fee simple tract. The latter easement was not condemned in the above action, but was conveyed to the United States by plaintiff's successor in interest by general warranty deed in 1966.

■■■ The plaintiff has no cause of action for expansion of easement FP–1100–10, nor any access road easement. It cannot reasonably be argued that the replacement of a missile or the fortification of the fee simple site are not consistent with the development of the estate. The prohibition against the expansion of one's rights does not entail halting an increase in use when that increase is consistent with the current needs and uses of the dominant estate. Not only was such an event certainly contemplated at the time of the condemnation ⌐˘ ˙he easements, but the increase in use is in no way inconsistent with the original grant. If, as the plaintiff contends, the Air Force exceeded the scope of this easement by leaving the right-of-way and rendering portions of pasture land unusable, that claim is more properly pursued as a trespass action under the FTCA or a takings claim.

■■■ As to the security and runoff easements, there remain issues of material fact. An issue of fact exists as to whether the security easement has been used consistently with the express purpose in its grant, and whether additional land has been taken to expand the parameters of the security zone without compensation to the plaintiffs. The taking of an easement, even one which is minimally restrictive, is the taking of a property interest and requires just compensation. A taking is not properly addressed pursuant to the FTCA.

To the extent, however, that the plaintiff alleges an increase in the quantity and quality of activity in the security easement, and damages arising therefrom, that claim has been properly pleaded. The security easement, FP–1100E–2, provides for only limited activity within the easement and limits the actions of the defendants to those not interfering with the plaintiff's agricultural operations. The judgment describes it as follows.

(c) Perpetual and assignable easements for the establishment, maintenance, operation, and use for a restricted area in, on, across and over Tract No. FP–1100E–2, consisting of the right to prohibit human habitation; the right to remove buildings presently or hereafter being used for human habitation; the right to prohibit entry on said tracts except by the owners, . . . ; the right to prohibit the use of firearms and explosives; the right to limit the use of said land to agricultural and grazing purposes and for the exploration, exploitation, and removal of oil, gas and other minerals without, however, the use of explosives in said . . . operations . . .; the right to post signs on said tract indicating the nature and extent of the Government's control . . .; and the right to ingress and egress over said land *for the purpose of exercising the rights set*

---

**5.** It is unclear precisely how much of this easement is over lands presently owned by the plaintiff. At the hearing for preliminary injunction, counsel for plaintiff suggested that the easement may encompass lands adjacent to the lands in question. It is not relevant to the court's determination precisely which lands the easement includes. The portion of the district court's ruling granting that easement reads as follows:

(g) Perpetual easements and rights of way in, on, over and across Tract No. FP–1100E–10 for the alteration and construction of an exist-

ing road, together with the right to trim, cut, fell and remove therefrom all trees, underbrush, obstructions, and any other vegetation, structures, or other obstacles within the limits of the right-of-way; subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines; reserving, however, to the landowners, their heirs executors, administrators, successors and assigns, and all other persons, the right to use said road in common with the United States.

*forth herein, which right is to be exercised in a reasonable manner; ...* United States v. 187.17 Acres of Land, et al., Civil Action No. 4798 at 4 (emphasis added).

Plaintiff contends that the activity which occurred within the security easement during the installation of the new missile, and even to the present, is wholly inconsistent with that grant. The pleadings suggest further that that activity resulted in damages to the plaintiff's property. The defendants did not challenge the factual basis of this claim in its motion for summary judgment.

The issue with regard to the runoff easement is in the nature of a trespass or takings action, in that the plaintiff alleges that increased use has expanded beyond the boundaries of the easement grant. The increased quantity of water, if any, passing through the existing easement is entirely consistent with the original grant and what effects were reasonably anticipated.

The Court finds that plaintiff has failed to state a cause of action for wrongful expansion of easement, except as to that claim involving additional activity within the security easement. Those claims alleging an expansion beyond the physical boundaries of the easements are more properly brought as trespass or takings actions, and will be addressed by the Court below.

## TRESPASS AND WRONGFUL TAKING

The United States may be sued, pursuant to the FTCA, for trespass. *Black v. Sheraton Corp. of America,* 564 F.2d 531 (D.C.Cir.1977); *United States v. Gaidys,* 194 F.2d 762, 765 (10th Cir.1952).[6] The term "wrongful act" in 28 U.S.C. § 1346(b) "clearly contemplates 'trespasses

which might not be considered strictly negligent.'" *McKay v. United States,* 703 F.2d 464, 472 (10th Cir.1983), quoting *Dalehite v. United States,* 346 U.S. 15, 45, 73 S.Ct. 956, 972–73, 97 L.Ed. 1427 (1953). The Court is aware, however, that a suit for trespass under the FTCA "does not provide a supplementary forum for plaintiffs demanding compensation for land permanently taken." *Roman v. Velarde,* 428 F.2d 129, 132 (1st Cir.1970). Further, this Court may not exercise pendent jurisdiction over takings claims properly brought under the Tucker Act, even though it may have jurisdiction over a related trespass claim. *McKay,* 703 F.2d at 470. Thus, care must be taken to discern between those claims which are accurately designated trespass and those which are asking the Court for compensation for a permanent taking of lands.

The plaintiff's claims that the defendant has exceeded its access road and work area easements and damaged pasture land survive this motion. This contention is limited only to areas outside those nine acres specified as being permanently taken by the plaintiff.

Plaintiff contends that the increased drainage due to the upgrading of the P–11 site and use of the areas surrounding the site by Air Force personnel and equipment has resulted in the permanent loss of approximately nine acres of pasture land. It further contends that the value of the land is one thousand dollars ($1,000) per acre, or $9,000. In its motion for summary judgment, the government does not challenge the factual basis for this contention, but argues that the basis of plaintiff's claims of misrepresentation are in an implied contract. Consequently, the government contends first that no such contract exists, and second that the claim, if any remains,

---

6. *But see Cole v. United States,* 657 F.2d 107 (7th Cir.1981), where the Seventh Circuit held that the government could not be sued for trespass in a state action, which was then removed to federal court. The court reasoned that since the United States is immune except to the extent that it consents to be sued, and since the plaintiff in the action had the burden of proving that consent and did not, the suit was barred.

What distinguishes that situation from the present is the filing of this cause of action pursuant to the FTCA, which clearly allows the United States to be sued for torts which would be cognizable against an individual in a state action, in a federal court. In *Cole,* an important underpinning of the holding is that unless a state court where an action originates has jurisdiction, a federal court can acquire none upon removal. *Id.* at 109.

should be transferred to the United States Court of Claims. The Court agrees with the plaintiff that no contention of implied contract or promissory estoppel has been advanced. The Court also agrees that the defendants have not met their burden on summary judgment to demonstrate an absence of genuine issues of material fact on this claim.

The plaintiff's claim plainly alleges a controversy over which this court has jurisdiction. There is no argument that the takings claim, by itself, exceeds the $10,000.00 jurisdictional limit imposed by 28 U.S.C. § 1346(a)(2). The portion of the complaint alleging that nine acres has been permanently taken should thus survive defendants' motion.

The portion of plaintiff's complaint alleging trespass survives only to the extent that lands other than those wrongfully taken are identified by the plaintiff. It may be difficult to discern which lands, if any, those are. But the plaintiff has forwarded the contention and the defendant has not demonstrated that no genuine issue of material fact exists.

## CONCLUSION

The plaintiff's complaint includes several claims made pursuant to the Federal Tort Claims Act. The plaintiff's claim for interference with prospective economic advantage is not actionable in this court because no special relationship or duty of care has been shown between the parties. Further, the only damages arise from an interference with prospective sales contract values, a cause of action specifically excepted by 28 U.S.C. § 2680(h). No cause of action for misrepresentation may be entertained in accordance with the same provision. The gravamen of the violation of good faith and fair dealing claim is, by the plaintiff's own pleadings, based in inaccurate representations made to the plaintiff by agents of the defendant.

The plaintiff's contention that constitutional torts are actionable under the FTCA is not correct. The courts are in agreement that the FTCA waives the sovereign's immunity only for those torts actionable against an individual based on state law.

The Court finds, as a matter of law, that no duty exists in Wyoming, absent a legislative or contractual requirement, to fence rights-of-way. No circumstances have been shown which convince the court to impose such a duty on the United States in this instance. A mere violation of an agency's own regulations, although this has not been shown, either, is not sufficient to establish such a duty.

The Court finds that no issue of material fact exists with regard to the plaintiff's contention of unreasonable expansion of access road easements. The plaintiff's claims that the use of the erosion and access road easements has exceeded the physical boundaries in those grants are more properly brought as trespass or takings actions. There is a cause of action stated for improper use of the security zone easement, FP–1100E–2.

The plaintiff has stated a cause of action for a wrongful taking of pasture lands without just compensation. It has also made contentions that trespass on its lands have caused damages which are compensable. To the extent that the trespass has resulted in a taking, there is no cause of action under the FTCA for that tort, as the Tucker Act is the controlling statute.

ACCORDINGLY IT IS ORDERED that the Defendants' Motion for Summary Judgment or in the Alternative Transfer to the United States Claims Court which addresses the plaintiff's claim for wrongful expansion of security zone easement FP–1100E–2, trespass, and wrongful taking of nine acres of pasture land without just compensation be DENIED. With regard to all other claims, the Defendant's motion is GRANTED.